L. M. WILEY AND OTHERS V. N. TRAIWICK AND ANOTHER.

A plea, that the plaintiffs wrongfully, maliciously, oppressively and without any just or probable cause, sued out an attachment on the same cause of action now sued on, and caused the goods of the defendant of the value, &c., to be seized and kept to the present time, by means whereof they were wholly lost to the defendants,—the plaintiffs abandoning and dismissing their former suit and attachment, before the defendant could plead to the same,—is a good plea in reconvention, notwithstanding that the former suit and attachment took place in another State.

An action for wrongfully suing out an attachment in one State may be maintained in another ; whether wrongfully or not, must be tested by the laws of the State where the attachment is obtained ; but, although valid in form, under the laws, the question still remains, whether or not the plaintiff has perverted the forms of the law, to the injury of the defendant.

The provision of the attachment law of Louisiana, which authorizes an attachment where the debtor is about to remove his property out of the State, seems not to apply where the creditor resides in New York and the defendant in Texas, and the goods are *in transitu* through the State of Louisiana.

This case, seems to imply that although all the facts may exist to authorize an attachment, yet, that the attachment may, in fact, be maliciously sued out ; for which an action will lie.

Error from Cass. The transcript of the proceedings in the suit in Louisiana, which was made a part of the defendants' plea in reconvention, disclosed the following facts: Petition filed July 17th, 1852, by the plaintiffs against the defendants, founded on two promissory notes, one for $3,448 15, due June 21st, 1852, and the other for $4,661 76, dated February 19th, 1852, and due at 12 months ; allegation that the plaintiffs resided in New York and the defendants in Texas ; affidavit of the indebtedness, that the defendants reside out of the State of Louisiana, and that they are about to remove their property out of the State of Louisiana, before the last named debt becomes due, and that writs of attachment are necessary ; bond in the sum of $15,000 ; writ of attachment, levied on certain property, as per inventory

returned ; citation to defendants, served by posting copy at courthouse door, and by delivering copy to A. Slaughter, curator *ad hoc*, of the defendants; August, 1852, default against Slaughter, curator ; February 12th, 1853, on motion of plaintiffs' counsel, suit dismissed at plaintiffs' costs, and leave granted to withdraw the notes sued on.

There was a bill of exceptions to the exclusion of testimony, but no statement of facts. The only error assigned was the order of the Court overruling the motion to strike out the dedefendants' plea of reconvention.

*C. A. Frazer*, for plaintiffs in error. I. Did there exist, at the time the attachment was sued out, a legal ground to support it, and was it obtained in accordance with law ? This questiom must be settled by the attachment laws of the State of Louisiana, where the remedy was resorted to ; and if by those laws, the remedy by attachment lay in favor of the plaintiffs, against the defendants, under the circumstances then surrounding the debt and the parties, there is an end of the whole question, and the judgment on the plea in reconvention should be reversed.

It is not pretended that the mere attempt to cover, by legal sanction, a wrong done in one State, will protect the wrongdoer, in a different State, when proceeded against by the injured party. In other words, the action to recover damages for a tortious act, is admitted to be transitory, and follows the person of the wrong-doer ; but an injury resulting from legal pursuit of a lawful remedy, is not in any instance the foundation of an action, and is without remedy.

Now under the facts stated in the plea, did the plaintiffs have a clear legal right to proceed against the defendants, at the time, and under the circumstances they did, by attachment in Louisiana ? And, first, as to the debt then due :

It is alleged in the plea that one of the debts, (over three

thousand dollars,) on which the attachment was founded, was then due, and that the defendants were non-residents of that State, and that they were then about to remove their property out of the same. The law of Louisiana declared this sufficient cause of attachment. It is in these words : " A creditor may " obtain such attachment of the property of his debtor, in the "following cases  *   *   *   *   *   2, when such debtor resides " out of the State." (Code of Practice, Art. 240.) The defendants were surely within the rule of the Code cited, and their property being in that state, it gave the Court jurisdiction to extend the remedy to the plaintiffs, who were also non-residents ; for there, as well as elsewhere, creditors thus situated, may become plaintiffs and proceed against their debtor, where either the presence of his person or property gives jurisdiction. This proposition is too clear to require authority ; but see Tyson v. Lansing, 10 La. R. 447 ; Lowery v. Lansing, Id. 449.

But again, as to the debt not due, when the attachment was sued out ; there may be and would have been more plausibility in the plea, if this debt had been the only foundation of the process. The right of the plaintiffs, however, under the law of Louisiana, in view of the facts alleged in the plea, to proceed by attachment on this deht, is as clear and absolute as their right in respect to the other debt.

Let it be here remarked, that a full and complete transcript of the entire record of the attachment suit, is made a part of the plea and filed as such.

It affirmatively appears from the plea, that the defendants were, at the time the attachment was obtained, removing their property out of the State of Louisiana, and the law of that State has made this good ground of the attachment process to secure a debt not due. It is this : " And in cases where the " debt or obligation is not yet due, it shall be lawful for any " Judge of competent jurisdiction to order a writ of attachment " to issue, whenever the said Judge shall be satisfied by the " oath of the creditor or his agent, of the existence of said debt,

" and upon the said creditor or his agent, taking oath to either
" of the requisites in number one, two and three of Article two
" hundred and forty, and complying with Article two hundred
" and forty-four, and moreover swearing that said debtor is
" about to remove his property out of the State before said
" debt becomes due," &c.   (Code of Practice, Art., 242.)

The right of a creditor in that State to the attachment pro-
cess to secure a debt not due, is clearly and explicitly granted
by the law cited.   All that is required to lay the foundation
for it, is the fact that the debtor is about to remove his pro-
perty out of the State, and this is admitted by the plea.

Again, the attachment was not only authorized by law, but
it was obtained in strict accordance with its provisions.

The plaintiffs were required to give bond to the defendants,
in an amount exceeding by one-half the amount of the debt sued
for, before they were entitled to the writ.

An examination of the bond given in the attachment suit,
will show that it is in strict conformity to the law on the sub-
ject.   Its condition is this :   " The condition of this obligation
" is such, that if the said L. M. Wiley & Co., shall well and
" truly pay all such damages as the said N. Traiwick & Co.,
" may sustain, in case it should be decided that the said writ
" of attachment was wrongfully obtained, then, in that case, the
" above obligation to be void, otherwise to be and remain in
" full force and virtue."

It is to be observed, that the law does not require a bond,
conditioned that the plaintiff will prosecute his attachment with
effect.   It is to be void, if the attachment was not wrongfully
obtained.

The affidavit on which the process was issued, is in accord-
ance with the law of Louisiana on the subject, and is a full
compliance with it.

Now, it is submitted, that the plaintiffs, under the law of
Louisiana, had a clear legal right to proceed by attachment,
against the defendants, at the time, and under the circumstances

which they did; and that they pursued that remedy in strict conformity to the law. And the only remaining question, as it would seem, is, whether the attachment was wrongfully sued out. What is the test of this question? It must necessarily be the existence, or non-existence of the facts, upon which the law authorizes such attachments to be issued. It may be safely asserted, that on a comparison of the facts alleged in the plea with the law, it will be found that all the facts, required by the law of Louisiana, to support the attachment, did exist, and that they are there virtually admitted to be true, and certain it is, that not one of them is denied, and that nothing is alleged as a fact, which, in any degree, pretends to assume that one of them is untrue.

Such being the State of the case, how can it be said the attachment was wrongfully sued out? Is it to be said that in contemplation of law it was wrongful, when the law authorized it—when it was in strict accordance with law? The very proposition is too absurd to need denunciation to condemn it. Its own fallacy is the most obvious feature it contains, and it is itself nothing but a fallacy.

The decisions of this Court, and many of those of the Supreme Court of Louisiana, on the subject under consideration, have been carefully examined, and it is confidently asserted, that not one can be found sustaining a plea in reconvention, where it was apparent that all the facts which the law required to lay the foundation of an attachment existed, to say nothing of their admission by the defendant, as in this case.

In the case of Brashear v. West and others, 7 Peters, 617, it is said: "It may also be stated with some confidence, that "those who sue out process authorized by law, are not respon- "sible for the loss consequent from that process, unless that "loss is produced by the improper use made of it."

Again it is said: "It is only legal injury that sets its ma- "chinery in operation, and this is meant by the maxim, that "*damnum absque injuria*, gives no cause of action.   \*   \*   \*

" Though the plaintiff may have sustained damage, it is *dam-*
" *num absque injuria,* for the act of the law, like the act of
" God, works no wrong to any one." (Sedgwick on Damages,
31.)

*S. F. Moseley,* also, for plaintiffs in error.

*T. J. & J. H. Rogers,* for defendants in error. The right
of the defendants to reconvene, under the circumstances, can
hardly for one moment be questioned. That damages claimed
as growing out of proceedings originating in the same demand,
may be the object of reconvention, see Boyd v. Marfield, 9 Mar-
tin R. 354, and Abat v. Holmes, 10 Id. 70. Where an attach-
ment has been taken out under circumstances that did not jus-
tify it, the defendant, under a plea in reconvention, is entitled
to compensation for any injury he may prove that he has sus-
tained thereby and for the trouble and expense to which he
may have been subjected. He may also recover what he has
paid for professional services. His right to damage for injury
to his reputation and credit depends upon the motive of the
plaintiff; if it were the purpose. of the latter, without probable
cause, to injure or harrass him, the damages should be exem-
plary. (See Offutt v. Edwards, 9 Robinson R. 90.)

Under the 7th Section of the Act of 20th March, 1839, amend-
ing Article 375, of the Code of Practice of Louisiana, a de-
mand in reconvention may be instituted for any cause though
not necessarily connected with or incidental to the main action,
where the plaintiff resides out of the State, or in a different
Parish from the defendant. (Mayo v. Savory, 4 Robinson R.
1.) And our own Supreme Court has decided that to permit
a defendant to reconvene so as to obtain in one action an adju-
dication of the respective claims of the parties, is more conven-
ient in practice and more consonant with our system of plead-
ing, than to restrain him to matters merely defensive, and to
compel him to resort to another suit, in order to obtain an ad-
judication of his rights and redress of grievances, which he may

have suffered at the hands of the plaintiff, in respect to the same subject matter. (Egery v. Power, 5 Tex. R. 501.)

HEMPHILL, CH. J. The plaintiffs in error brought suit in April, 1853, against defendants, on a note for four thousand six hundred and sixty-one 76-100 dollars, and interest ; and the defendants pleaded in reconvention, that on the 17th July, 1852, the plaintiffs had brought suit against the defendants, for the recovery of this identical note in the District Court for the parish of Caddo, in the State of Louisiana, together with the further sum of three thousand and forty-eight 15-100 dollars ; that a writ of attachment was issued in said suit, by virtue of which the Sheriff of Caddo parish seized and took into possession a large quantity of goods, belonging to defendants, which goods they had on their way from the city of New York to Jefferson, in the county of Cass ; which they had purchased in New York, for the purpose of vending as merchants in Texas, and which cost eleven thousand seven hundred and fifty-five dollars in the city of New York, and were worth to the defendants, at the time of their seizure, the sum of twenty-five thousand dollars.

Defendants aver that they were not served with notice of the pendency of said suit, and that the plaintiffs, after they had sued out said attachment and seized the defendants' goods, voluntarily,—and before defendants could plead to said suit,—dismissed and abandoned the same ; and for greater certainty, of the proceedings in said suit, a certified transcript was filed as an exhibit and made part of the answer ; and the defendants further averred, that the note now sued upon was not due at the time of the attachment ; that the plaintiffs were then and are now residents of the city of New York, and that the defendants were then and still continue to be residents of the State of Texas ; and the defendants further averred, that notwithstanding the said plaintiffs, at the date of the commence-

ment of the said suit and the suing out of attachment, well knew that the defendants were merchants trading in Texas, they, the said plaintiffs, wrongfully, maliciously and oppressively, and without any just or probable cause, sued out the said attachment, and, with the intention of harrassing the defendants, caused the said goods, &c., to be seized by the Sheriff of Caddo, and to be kept to the present time, by means whereof they were wholly lost to defendants; and that, by said wrongful, malicious, illegal and oppressive acts, they were greatly injured in their credit and standing, and were compelled to make great sacrifices of their property, and to quit doing business as merchants, and have been damaged to the amount of twenty-five thousand dollars.

To this plea was appended a transcript of the proceedings in the suit in the District Court of the parish of Caddo, State of Louisiana. The plaintiffs excepted to this plea in reconvention, and moved that the same be stricken out on the grounds,

1st. That the same was not pertinent to, or responsive to the allegations in the petition.

2nd. That the matters and things, set up in the plea, were alleged to have transpired out of the State of Texas, and without the jurisdiction of the Court, and within a jurisdiction over which it had no control.

3rd. That the wrongs complained of in said plea, are not alleged to have been in contravention of the laws of Texas, nor to have been done within the jurisdiction of said laws.

4th. Because matters are alleged in defence here as having arisen under the jurisdiction of

5th. Because the plea of reconvention does not allege the said wrong to have been sustained by reason of the suit now pending in this Court; and for other reasons, apparent on the face of said plea.

The exception was overruled, and the jury found for the plaintiffs the amount of the note and interest, subject to a deduction of four thousand dollars damages in favor of defendants.

The plaintiffs have brought up the cause by writ of error, and assign that the Court erred in overruling plaintiffs' motion to reject defendants' plea in reconvention, for the reasons set forth in said motion.

The reasons are then enumerated, but in a very expanded, amended and enlarged form, and, in some respects, additional to the grounds set out in the special exceptions, as averred in the pleadings.

The only ground for consideration is, whether the matter, contained in the plea, constitutes a cause of action ; for if not, the plea being in the nature of a cross action, cannot be sustained. And we are of opinion, that the facts, as alleged, constitute a ground of complaint, in law, which, on proof, would entitle the defendants to relief. The plea is, that the plaintiffs wrongfully, maliciously, oppressively, and without any just or probable cause, sued out the attachment, seized the goods, and have ever since kept them, to the entire loss of defendants, the plaintiffs subsequently abandoning and dismissing their said suit and attachment, before the defendants could plead to the same. These facts, if true—and they are to be held as such on exception—present strong grounds of complaint, and are sufficient to sustain an action.

The circumstance that the attachment was not issued in the present suit, is immaterial. It was sued out in a suit between the same parties, on this identical note, though coupled with another claim. The damages, claimed by defendants, grew out of a proceeding originating in the present suit, and being necessarily connected with it, come within the principle of the rule which admits claims of defendants, when connected with the main action or cause of action, to be set up by way of reconvention. (Boyd v. Warfield, 6 Martin, N. S. 671.)

Nor is it material that the first proceeding was had in another Court, from that in which the present suit is brought, or in a foreign Court. The question is not, where the attachment issued, but whether it was justifiable. Of course, if issued in a

foreign State, the forms of the proceeding must be tested by the laws of that State ; but if valid, in form, under those laws, the question still remains, viz : whether or not the plaintiff has perverted the forms of the law to the purposes of oppression, and this is for the determination of the Court, domestic or foreign, in which it may arise ; and whether the proceeding, out of which it is charged to have originated, be in the one Court or the other, is immaterial.

It is not necessary, in this case, to consider, particularly, the facts which must exist, in order to support an action for a malicious attachment, or the various grounds on which the charge of malice may be rebutted and probable cause be shown. But I will refer to one circumstance, suggested by the facts and arguments in the cause, viz : that the note was not due at the time of the attachment. Now, although, by the laws of Louisiana, attachment may issue on a note not due, yet this is not done on the usual oath, but, in addition to that oath, the creditor must also swear that the " debtor is about to remove his property out of the State before the debt becomes due." (Code of Practice, Art. 242.) This evidently implies that the property in question has a fixed *locus* in the State, and is about to be removed, most probably to the prejudice of domestic creditors. In no legitimate, at least in no obvious sense, can it be construed to embrace property on its passage through the territory of that State, to its destination in another State. A transportation of goods through a State, and a removal of them from that State, are different things. They are not, at least entirely, expressions of equivalent import, and a seizure of such goods in their passage, on the pretext that the defendant was about to remove them from the State, at the instance, especially, of a foreign creditor, must, *prima facie*, be regarded as malicious, and not to be justified or extenuated, unless under strong circumstances, as for instance, of fraudulent designs on the part of the debtor, or almost a certainty of actual loss to the creditor.

The incalculable mischief that might grow out of the mali·cious use of this writ, when employed for the unjustifiable purpose of obstructing the free passage of property through the territory of the State, are too obvious to require any observation. They will present themselves to every mind, on the ·slightest reflection.

Whether the circumstances, in this case, were such as to have justified the issue of the writ in Louisiana, is not before this Court for decision. The jury has found otherwise, and there has been no appeal from their verdict. The only question which we have to consider, is, whether the plea of reconvention was sufficient in law, and we are of opinion that it was, and that there was no error in overruling the exception of plaintiffs.

Judgment affirmed.