JAMES CULBERTSON v. CABEEN & JARMAN.

The affidavit is sufficiently formal and correct, except in that part which attempts to set forth the ground on which the attachment was sought, which is in these words: "Affiant further says, that said Culbertson is about to transfer or secrete his property," &c., &c. In order to entitle a party to an attachment, it is necessary, as a condition precedent to his right, that he shall make affidavit to some one of the various causes prescribed by the statute as a sufficient ground, (Paschal's Dig., Art. 142, Note 259.)

That a party is about to transfer his property for the purpose of defrauding his creditors is one ground; that he is about to secrete his property for the same fraudulent purpose, is another ground. Each one of these causes is a separate and distinct fact, independent of the other.

To transfer property is to place it in the hands of another; to secrete property is to hide it, to put it where the officer of the law will probably not be able to find it. These two acts can in no sense be considered as phases of the same general facts. To embrace these two causes in the same affidavit, makes the affidavit indefinite. Neither fact is sworn to. The affidavit is in the alternative. The affiant swears that one or the other fact exists, but does not say which.

The affidavit must be certain and positive, and not in the alternative.

As to notes not due when the attachment was sued out, the right of the party to sue and of the court to entertain the suit depends upon the attachment, for it is by the attachment alone that a debt not due can be sued; and the suit must abide the fate of the attachment. (Paschal's Dig., Art. 154, Note 265.)

But if the notes mature pending the suit, the plaintiff may amend, subject to all defenses.

The remedy of attachment is a harsh one and must be strictly pursued, and if it be pursued wrongfully and without probable cause, the defendant may plead the actual damages sustained in reconvention.

And if, besides being untrue, the party suing out the attachment acted maliciously, and without probable cause for believing the ground of the attachment to be true, he is liable, in addition, for vindictive or exemplary damages, as a punishment upon him for his wrongful and oppressive use of the powers. Malice and the want of probable cause must both concur to support the charge of malicious prosecution. Neither is alone sufficient. If it were malicious and unfounded, but there was probable cause for suing out the attachment, nothing more than the actual damage sustained can be recovered. But malice may be implied from the want of probable cause; the implication subject to be repelled, however, by facts and circumstances indicating a fair and legitimate purpose, and honest pursuit of a claim believed to be just.

---

---

Any unlawful act, done willfully and purposely to the injury of another, is, as against that person, malicious.

The questions of malice and of probable cause are questions for the jury, upon the evidence, facts, and circumstances of the whole case.

In order to establish an honest purpose, it must appear that such facts and circumstances, or so much of them as were sufficient to induce the belief, were communicated or known to the party before he commenced his proceeding.

Error from Austin. The case was tried before Hon. George W. Smith, one of the district judges.

On the 23d December, 1858, James Culbertson executed his note, due at one day, to Cabeen & Jarman, for $1,098 14, and on the same day his other note, to the same parties, for $124 05, due at four months; and on the next day he executed his third note, to the same parties, for $2,036 68, due at six months. On the 18th April, 1859, the plaintiff filed his petition and affidavit for attachment, gave bond, and sued out the process of attachment. There is a remark in the opinion to the effect that the suit had been commenced, and that the defendant had answered before the affidavit for attachment was filed. But this is an error of fact, whether it influenced the opinion in regard to the notes not due or not. By the 16th section of the attachment law, the plaintiff had the right to the attachment on a debt not due, but would have no judgment until the debt be due. (Paschal's Dig., Art. 154.) There was no allegation in the petition setting forth a ground of attachment, but it was averred that the first was due, and the others would become due in course of time. The affidavit, that the petition was true, required by the 143d section of the act to regulate proceedings in the district court, was made. (Paschal's Dig., Art. 138, Note 257.)

After swearing succinctly to the debt, the affidavit proceeded: "That defendant is about to transfer or secrete his property, for the purpose of defrauding his creditors, and that thereby affiant and said Jarman, as partners, will probably lose their debt."

At the return term defendant moved to quash upon various grounds assigned, answered by general denial, a plea in reconvention for wrongfully suing out the writ, and a special denial that he was about to transfer or secrete his property, as stated in plaintiff's affidavit.

The attachment was levied upon a storehouse and goods, a stable, and a fine horse, and goats, and about forty-five head of horses, mules, jacks, and jennets, and two negro slaves, in all to the value of about $7,000.

The court overruled the motion to quash, except as to the levy upon the stock of goods and the lot of forty-five head of horses, jacks, jennets, &c.  The defendant had replevied the property.

At the trial the plaintiff proved his notes.  In support of the plea in reconvention, the defendant proved that he had been engaged in the mercantile business in Hempstead, Austin county, for some time previous to the levy of the attachment; that his credit and standing up to that time had been good; that he was taking in cash on sales from $15 to $20 a day; that it was then the dull business season; that defendant was a saving, economical, and honest man; that at the time of the levy he was away from home, had gone to Lockhart, one hundred and twenty-five miles from Hempstead, on business; that, at the time of the levy and seizure of this property, Cabeen, one of the plaintiffs, was informed of defendant's absence, and that he would return in a few days; that he did return home on the night after the attachment was levied in the morning; that a short time before the levy defendant proposed to one of the plaintiffs to sell him the stock of goods he then had on hand, to the amount of $2,500 or $3,000, and that the same should be a credit upon the notes sued on; that said plaintiff declined, and said he was not uneasy about the amount defendant owed plaintiffs.  That defendant applied the money taken in at the store to the payment

of debts due for goods purchased. That defendant made no attempt to transfer or secrete any of his property, nor was there any proof of his intention to do so at or about the time of the levy. That the levy of the attachment annoyed and harassed defendant, and injured his credit very much; that he was forced to quit business, and his creditors all began immediately to press him. That defendant was honorable in his dealings, and those who knew him had entire confidence in him. That he was not an experienced or skillful merchant, but was deficient in business tact. That he had a "good deal of property" at the time the attachment was levied, and was then solvent; that he had already paid $100 attorney's fees for defending this attachment, and that it was reasonably worth $250 more to conduct the defense to a final termination.

One witness only had heard rumors of defendant's being in failing circumstances about the time of the levy. It also appeared that defendant had expressed a disposition to avoid or flinch from paying for some high-priced Hemstead town lots. There was no proof that rumors or any declarations of this character ever came to the hearing and knowledge of either of the plaintiffs. It further appeared that the persons to whom defendant made these declarations were his creditors.

The court charged the jury as to plaintiff's liability in damages to defendant for wrongfully suing out the attachment, and that counsel fees could not be allowed as damages, inasmuch as they were not the natural consequence of the levy. The jury found for plaintiffs the amount of their debt; and defendant assigns for error, among other things, "that the court erred in refusing to quash or abate the attachment, *in toto*, on defendant's motion."

*Hunt & Holland*, for the plaintiff in error.—1. The affidavit was insufficient, being in the alternative, that defend-

ant was about to transfer or secrete his property, for the purpose of defrauding his creditors. (Hopkins v. Nichols, 22 Tex., 206.)

Though this exception was not specially assigned in the motion to quash, we think it might well have been noticed, and ought to have been noticed, and held sufficient by the court below upon the fourth exception of defendant's motion, that "the proceedings of the plaintiffs and the officers of the court are all irregular and insufficient in law."

This defect in the affidavit goes to the jurisdiction of the cause and the very foundation of the proceeding, and ought to be permitted to be taken advantage of upon general exception. (Drake on Attach., §§ 83, 84, 85.)

2. The court erred in charging the jury as to "probable cause," and as to "attorney's fees," and as to "honest desire to secure the debt," and "wanton disregard of defendant's rights," and malice.

The charge of the court assumes that malice, in fact or intent, on the part of plaintiffs, to vex and harass defendant, must have been affirmatively shown, in order to make plaintiffs liable for exemplary damages; whereas the law is, that malice may be inferred from circumstances and from want of probable cause, as well as from the conduct and declarations of plaintiffs. But want of probable cause is independent of malicious motive. (2 Greenl. Ev. § 453, note 1, § 454.)

Malice in law is not malice in fact, and does not necessarily imply spite and vindictiveness. (1 Amer. Leading Cases, p. 226.)

"In a legal sense, any unlawful act, done willfully and purposely to the injury of another, is, as against that person, malicious."

Again, "the question of probable cause is composed of law and fact; it being the province of the jury to determine the facts proved, and of the court to determine

whether they amount to probable cause. (2 Greenl. Ev., § 454.)

*Ben T. Harris,* for the defendants in error.—The judge's charge to the jury in this case is substantially the same as that given in the case of Mayfield v. Cotton, 21 Tex., 4; and the facts in the cases are very similar. "Whether there was probable cause for suing out the attachment, the motive which prompted to the proceeding, and whether it was employed vexatiously or oppressively," (Monroe v. Watson, 17 Tex., 626,) were questions for the jury, and 'they were properly submitted in the instructions given.

Assuming that the jury were correctly charged, then their verdict is responsive to the law. Plaintiffs' cause of action was not disputed. The notes sued on were unimpeached, and the jury not having found damages for the defendant, (the question of damages, whether actual or punitory, was distinctly submitted,) it necessarily follows that they were satisfied, and believed from the evidence before them that there was probable cause for suing out the attachment; that plaintiffs had not acted maliciously, nor with a view to harass and annoy the defendant; and that he had not sustained such damages as to entitle him to compensation at their hands.

COKE, J.—It is not necessary to invoke the rigid scrutiny which uniformly obtains in passing upon proceedings by attachment to lead to the conclusion that the court erred in overruling the motion to quash the attachment in this case.

The affidavit for attachment, which is the basis and ground-work of the proceedings, is so fundamentally defective, that the fourth assignment in the motion to quash, general and indefinite as it is, reaches and sufficiently presents it. The affidavit is sufficiently formal and correct, except in that part which attempts to set forth the ground

on which the attachment was sought, which is in these words: "Affiant further says, that said Culbertson is about to transfer or secrete his property," &c. In order to entitle a party to an attachment, it is necessary, as a condition precedent to his right, that he shall make affidavit to some one of the various causes prescribed by the statute as a sufficient ground. [Paschal's Dig., Art. 142, Note 259.]

That a party is about to transfer his property, for the purpose of defrauding his creditors, is one ground; that he is about to secrete his property, for the same fraudulent purpose, is another ground. Each one of these causes is a separate and distinct fact, independent of the other. To transfer property, is to place it in the hands of another. To secrete property, is to hide it, to put it where the officer of the law will probably not be able to find it. These two acts can in no sense be considered as phases of the same general fact. To embrace these two causes in the same affidavit makes the affidavit indefinite. Neither fact is sworn to. The affidavit is in the alternative. The affiant swears that one or the other fact exists, but does not say which. This is not a compliance with a statute which requires a positive and direct affirmation, under oath, of the existence of a certain fact, to entitle a party to the remedy by attachment. The general rule is well established, that an affidavit for an attachment must be certain and positive, and not in the alternative. (Hopkins v. Nichols, 22 Tex., 208.) The affidavit in this case does not conform to either of the requirements of this rule.

In Hopkins v. Nichols, 22 Tex., 208, the precise question arising on this affidavit was fully discussed by Mr. Justice Roberts, and the conclusion reached that the affidavit was fatally defective. That case is decisive of the insufficiency of the affidavit in this.

One of the notes sued on was due at the date of the institution of the suit; the other two, constituting more than

two-thirds of the aggregate amount of the judgment, were not due at that date, and did not become due until several months thereafter. (The attachment in this case is not an original, but only an auxiliary proceeding, the ordinary process having been prayed, issued, and the defendant having appeared and answered.) [This is a mistake—*Reporter.*] The quashing of the attachment on account of the defective affidavit does not impair the right of the plaintiff below to proceed to judgment on so much of his debt as was due at the date of the institution of the suit. But, as to the notes not due at that time, the right of the party to sue, and of the court to entertain the suit, depends upon the attachment, for it is by attachment alone that a debt not due can be sued. The suit, therefore, as to these, must abide the fate of the attachment, and, as we have seen, that must fall on account of the defective affidavit. The suit cannot be maintained, and the plaintiff below cannot recover for the amount of the notes not due. (Hart. Dig., Art. 37; Sydnor v. Totman, 6 Tex., 196.)

If, after these notes became due, the plaintiff had, by an amendment, declared on them, and alleged the fact, and prayed judgment for the amount, this part of his suit would have been relieved of its dependence on the validity of the attachment for its standing in court, and the quashal of the attachment would not have destroyed the right of the plaintiff to proceed to judgment on his entire demand, without prejudice to the rights of the defendant to make such defenses as had accrued or were in existence up to the date of the filing of the amendment. But no such pleading, or anything tantamount to it, is found in the record, and therefore there is nothing to save this portion of the demand sued on from going out of court with the imperfect attachment on which it was solely based. It is not necessary to notice the various other errors alleged to exist in the attachment proceedings and assigned in the motion to quash.

We refrain from any expression of opinion upon the

testimony introduced on the issue made by the defendant's plea in reconvention, for damages for the alleged wrongful suing out of the attachment. Because of the error of the court, overruling the motion to quash, the judgment must be reversed and the cause remanded, and the issue will again be submitted to a jury.

The remedy by attachment is a harsh one. A party, upon his *ex parte* affidavit, can have the property of his debtor seized and taken from his possession, and thereby subject him to great inconvenience, his business to great interruption, and his credit to great injury. The only security against the abuse of this most stringent and summary remedy is, the right of the defendant to require of his adversary a strict compliance with the conditions on which the remedy is granted, and if the remedy is pursued against him maliciously, and without probable cause, to hold the malicious prosecutor responsible in damages for his wrongful use of it. The party who resorts to an attachment process against his debtor does so at his peril. No belief, however firm and sincere, that the grounds set out in his affidavit for attachment are true, can affect the defendant's right to recover against him the actual damage sustained, if in fact they are untrue. (Drake on Attach., § 174.) But if, besides being untrue, the party suing out the attachment acted maliciously, and without probable cause for believing the ground of the attachment to be true, he is liable, in addition, for vindictive or exemplary damages, as a punishment upon him for his wrongful and oppressive use of the process. Malice and the want of probable cause must both concur to support the charge of malicious prosecution. Neither is alone sufficient. If it were malicious and unfounded, but there was probable cause for suing out the attachment, nothing more than the actual damage sustained can be recovered. (2 Greenl. on Ev., § 453; Walcott v. Hendrick, 6 Tex., 407.) But malice may be implied from the want of probable cause, the implication subject to be

repelled, however, by facts and circumstances indicating a fair and legitimate purpose and honest pursuit of a claim believed to be just. (5 B. Monr., 544; Mitchell v. Jenkins, 7 B. & A., 588, 594; Wiley v. Trawick, 14 Tex., 662.)

"In a legal sense," says Mr. Greenleaf, in his work on Evidence, vol. 2, § 453, "any unlawful act done willfully and purposely to the injury of another is, as against that person, malicious." It need not imply malignity, nor even corruption, in the appropriate sense of these terms. Any improper motive constitutes malice in the sense it is here used. (Drake on Attachment, § 733.)

The question of malice is for the jury, to be determined from the facts and circumstances proved. And so the question of probable cause, though a mixed question of law and fact, may ordinarily and properly be submitted to the jury, and the existence of probable cause may be implied by the jury from such facts and circumstances as lead to the inference that the party was actuated by an honest and reasonable conviction of the justice of his suit, or, with reference to this case, of the existence of the facts on which he based his application for the attachment. But in order to have this effect, it should appear that such facts and circumstances, or so much of them as was sufficient to induce the belief, were communicated or known to the party before he commenced his proceedings. (2 Greenl. on Ev., § 454.)

It is not deemed necessary to go into an extended discussion of principles of law so well settled as are those applicable to this case.

The charge of the court will not be reviewed, nor will any other of the various assignments of error be considered, because not necessary in the view we have taken of the case to its decision.

Judgment reversed, and cause remanded for further proceedings.

REVERSED AND REMANDED.