Filed Oct. 9, 1885.

---

No. 12,079.

## UPPINGHOUSE v. MUNDEL.

MALICIOUS PROSECUTION.—*Probable Cause.*—*Proceeding at Law.*—To constitute a proceeding at law a malicious prosecution, it must not only be prosecuted maliciously, but without probable cause.

ATTACHMENT.—*Proceedings Wrongful and Oppressive.*—To make a party liable for causing a writ of attachment to be issued, it must be shown that the proceeding was wrongful and oppressive under the law under color of which it was prosecuted.

SAME.—*Transfer of Claim.*—*Injuria sine Damno.*—The transfer of a just debt to the jurisdiction of another State, where, by appropriate judicial proceedings, its collection was enforced with greater facility and more effectually than could have been done, if at all, in this State, is not an injury for which damages may be recovered.

SAME.—*Statute Construed.*—The statute declaring such a transfer to be a misdemeanor, R. S. 1881, section 2163, was enacted to promote the public welfare, and not to redress merely private grievances.

From the Floyd Circuit Court.

*C. L. Jewett,* for appellant.

*J. H. Stotsenburg,* for appellee.

NIBLACK, J.—Complaint by Calvin C. Uppinghouse against Caroline Mundel for damages.   A demurrer was sustained to the complaint, and there was final judgment against the plaintiff upon demurrer.   This appeal is prosecuted upon the theory that the circuit court erred in holding the complaint to be insufficient upon demurrer.

The complaint charged that at the time of the commission of the grievances complained of, the plaintiff, the defendant and the corporation known as the Louisville, New Albany and Chicago Railway Company, were each and all within the jurisdiction of the State of Indiana; that the plaintiff was, also, at the time, a resident householder of Floyd county in this State, and in the employment of said railway company at monthly wages; that said railway company was then indebted to him, the plaintiff, in the sum of seventy-five dollars; that the plaintiff was not the owner of any real estate, and his entire personal estate did not exceed in value the sum of $300; that the defendant, intending to injure the plaintiff, did, in January, 1883, wrongfully and unlawfully transfer to the firm of Hannon Brothers, of the city of Louisville, in the State of Kentucky, a claim for debt amounting to the sum of sixty dollars, which was due from the plaintiff to the defendant; that the defendant transferred said claim for debt to the said Hannon Brothers for the purpose of having such claim collected out of the wages due to the plaintiff from said railway company by proceedings in attachment and garnishment in the said State of Kentucky; that after the transfer of said claim as stated the said Hannon Brothers commenced a proceeding in attachment against the plaintiff before one McCann, a justice of the peace of Jefferson county, in said State of Kentucky, and in said proceeding attached the wages due to the plaintiff, as above set forth, and also summoned the said railway company to answer as garnishee as to the amount of wages due from it to the plaintiff; that in, and as part of, such proceedings, it was ordered and adjudged by said

justice that the railway company should pay into his court the sum of $75, so due from it to the plaintiff for wages, in satisfaction of the claim sued on and costs of suit; that thereafter the said railway company paid said sum of money so due for wages into the said justice's court, where it was all applied in payment of the claim transferred by the defendant to Hannon Brothers as herein above stated, and the costs of the proceedings in attachment and garnishment; that by reason of the premises, the plaintiff was deprived of all benefit of the exemption laws of the State of Indiana, enacted for the protection of householders and their families ; that on account of the annoyance which such attachment and garnishment proceedings inflicted upon the railway company, it discharged the plaintiff from its employment, and he and his family were in consequence left in a destitute and suffering condition, and he was put to great expense in obtaining other employment, all to the plaintiff's damage in the sum of five hundred dollars.

Section 2163, R. S. 1881, is as follows : " Whoever, either directly or indirectly, assigns or transfers any claim for debt against a citizen of Indiana, for the purpose of having the same collected by proceedings in attachment, garnishment, or other process out of the wages, or personal earnings of the debtor, in courts outside of the State of Indiana, when the creditor, debtor, person, or corporation owing the money intended to be reached by the proceedings in attachment are each and all within the jurisdiction of the courts of the State of Indiana, shall, upon conviction thereof, be fined in any sum not more than fifty dollars nor less than twenty dollars for each offence."

The sufficiency of the complaint is sought to be maintained upon the ground that by the unlawful act of transferring the claim against him to Hannon Brothers, the appellant was deprived of his right to an exemption of a specified amount of property from execution, to which he was entitled under the

laws of the State of Indiana, and was, in consequence, compelled to pay, out of his wages, a debt of $60 which he could not have been successfully required to pay by any proceedings in the courts of this State. Therefore, as construed by counsel, the demand made by the complaint was only for consequential damages resulting from an act declared by law to be a misdemeanor, and for that reason had no analogy, either to an action for a malicious prosecution, or to a suit upon an attachment bond for wrongfully suing out a writ of attachment.

To constitute a proceeding at law a malicious prosecution, it must not only be prosecuted maliciously, but without probable cause. To make a party liable for causing a writ of attachment to be issued, it must be shown that the proceeding was wrongful and oppressive under the law under color of which it was prosecuted.

The fair and, indeed, necessary inference from the averments of the complaint was, that the debt transferred by the appellee to Hannon Brothers was a just debt, and one which might have been collected from the appellant by proper proceedings in this State out of any property he then had or might thereafter have acquired subject to execution. It was not otherwise charged, and was hence inferentially admitted, that the attachment and garnishment proceedings had before Justice McCann were authorized by and in accordance with the laws of the State of Kentucky. It has been held, and so far as we are advised it is still the rule in that State, that the mere failure to succeed in an attachment suit does not forfeit the bond given to indemnify the defendant, but that it must be affirmatively shown that the suit was instituted without just cause. *Pettit* v. *Mercer*, 8 B. Mon. 51. Consequently, as applied to proceedings in that State in which the plaintiff obtains a judgment in attachment, the presumption in favor of the justice of the debt and the legality of the proceedings must be as strong, if not stronger, than it should

be as applicable to similar proceedings in this State where all the presumptions are ordinarily indulged in support of the propriety and regularity of judicial proceedings. *Harper* v. *Keys*, 43 Ind. 220.

It is not claimed that the mere transfer of the debt in this case by the appellee to Hannon Brothers, however unlawful or even criminal the intent may have been, conferred any right of action upon the appellant. The statute declaring such a transfer to be a misdemeanor was enacted to promote the public welfare, and not to redress merely private griev-ances. The *gravamen* of the appellant's demand for damages was consequently based only upon the alleged injurious con-sequences which followed, as well as resulted from, the trans-fer of the debt. These consequences were the transfer of the ownership of the debt to the jurisdiction of another State where, by appropriate judicial proceedings, its collection was enforced with greater facility, and more effectually than could have been done, if at all, in this State. But can a resort to a remedy which the law has provided for such and similar cases be regarded as *injury* in the full and legal meaning of that term? We know of no principle or precedent which would justify such an assumption.

Weeks on *Damnum Absque Injuria*, at page 12, says: " Where an act, authorized by law, gives rise to damages, it is therefore generally *damnum absque injuria ;* and where an unathorized act results in detriment or loss to another, if it is not a damage in contemplation of law, it is *injuria sine damno.* The injury must be such as the law regards as an injury, as it is not every loss that results to the plaintiff, through the act of the defendant, for which damages may be recovered."

Conceding, therefore, that, by the transaction complained of, the appellant was compelled to pay a debt which by reason of our exemption laws, could not then have been collected. from him in this State, and that, under the circumstances and in consequence, much annoyance and inconvenience were

inflicted upon him in his business, no injury, in contemplation of law, resulted to him from the transfer of the debt in question. Cooley Torts, 180, *et seq.*; 2 Sutherland Dam. 58.

The judgment is affirmed, with costs.

