JOSEFINA ENSEÑAT DE DEFENDINI, Plaintiff and Appellant, *v.* MATEO DEFENDINI, Defendant and Appellee.

No. 5187. Argued June 4, 1930.—Decided July 9, 1931.

*Tous Soto & Zapater* and *J. Pérez Cordero* for appellant. *R. López Antongiorgi* and *J. Suárez Garriga* for appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

Josefina Enseñat, widow of Defendini, alleged in her complaint against Mateo Defendini that she was the sole and universal testamentary heir of Santos Defendini Rodríguez; that the latter, upon his death, left as a part of his estate a general deposit in the Paris branch of the Royal Bank of Canada amounting to 43,415.20 francs; that when the plaintiff attempted to withdraw this sum she was unable to do so, because the defendant, on May 1, 1920, by falsely alleging that Santos Defendini owed him $4,000 on a loan, had obtained an order of the Civil Tribunal directing the sequestration of said sum; that after procuring said sequestration, the defendant herein made no effort to establish his Santos Defendini never borrowed from Mateo Defendini the claim either in the courts of France or of Puerto Rico; that sum referred to, nor any other, nor was he his debtor. As a second cause of action, plaintiff alleged that the sequestration of the above-mentioned sum has caused her damages

consisting in the difference in the rate of exchange; in being deprived of the interest accrued; and in the annoyance, expense, and mental pain sustained by the plaintiff.

The complaint was demurred to first for insufficiency, which seems to have been predicated on the prescription of the action; and then for want of jurisdiction, which is the ground that most concerns this appeal. The trial court sustained the demurrer; and the present appeal has been taken from the final judgment rendered.

Upon analyzing the complaint we find that it is based on the alleged nullity or invalidity of the order of sequestration of funds issued by the Tribunal of the Seine, in Paris. In reference to that order it is alleged that it was procured upon a false allegation of indebtedness. Based upon this fact it is prayed that it be declared that Santos Defendini, upon his death, owed nothing to Mateo Defendini, and that the latter had no cause of action whatsoever against the heirs of the former to claim the sum of $4,000 or any other sum by reason of any loan; that the sequestration obtained by Mateo Defendini of money originally belonging to Santos Defendini and later to his heirs, on deposit in the branch in France of the Royal Bank of Canada, was illegal; and that by reason of said sequestration the plaintiff suffered damage for which the defendant is liable.

The whole case hinges upon the alleged illegality of the sequestration of funds decreed by the French court. A court of Puerto Rico is asked to declare the illegality of such sequestration, and likewise the nonexistence of the debt which was an indispensable element for the sequestration; and the recovery of damages is sought based upon the said illegality. This, we can say, is the *leit-motif*, the basic motive, of the whole case.

The court *a quo* in its opinion said:

"If, as the plaintiff alleges, Mateo Defendini procured the order of sequestration by means of false averments, there is no doubt that in order to adjudge the defendant to pay damages this court will

have to decide upon the validity or illegality of the said order of sequestration. If the court should find that the order was legally obtained, then the second cause of action, that is, the one relating to the damages sustained by the plaintiff, would be left without a basis to stand on; and if, on the contrary, this court should decide that the order obtained from the court in Paris is illegal or void because it was procured by means of false representations or averments on the part of the defendant, it would be passing upon and judging acts of a foreign tribunal: a thing which a very well-known principle of Conflict of Laws forbids it to do. The illegality or the validity of the sequestration can be determined only by the court which decreed it, that is, the Civil Tribunal of the Seine, to which, under Private International Law, is acknowledged exclusive jurisdiction to annul, revise, or modify its orders or decisions. In the case of Uppinghouse v. Mundel, 103 Ind. 238, 241, 2 N.E. 719, it was declared that 'to make a party liable for causing a writ of attachment to be issued, it must be shown that the proceeding was wrongful and oppressive under the law under color of which it was prosecuted.'

"In the case of Wiley v. Traiwick, 14 Texas 662, the court held:

"'An action for wrongfully suing out an attachment in one State may be maintained in another; whether wrongfully or not, must be tested by the laws of the State where the attachment is obtained.'

"This principle of Private International Law has been recognized and ratified by our Supreme Court, as may be seen in the case of Casiano et al. v. Luchetti, 24 P.R.R. 106, and subsequent cases."

We concur in the above citations. The district court grasped clearly the exact situation in this case.

It does not appear from the complaint whether the heirs of Santos Defendini, the then defendants, were in France and participated in the sequestration proceedings, if any such took place, nor whether they were domiciled or residents in France at the time of said proceedings; in short, none of the facts required to enable us to make a complete study of the case in the light of the opinions advanced by textwriters, such as Dicey in his work on Conflict of Laws.

In the decision in *Hilton* v. *Guyot,* 159 U. S. 113, 228, many English and United States cases were cited, and we find

a study of the credit and effect to be given to the judgments and decisions of foreign tribunals, and the position taken on the question by the different nations in Europe and America. With respect to the difficulties involved in the decision of these questions, we need only to quote the following excerpt from the argument of the appellants in that case:

"There is scarcely any doctrine of the law which, so far as respects formal and exact statement, is in a more unreduced and uncertain condition than that which relates to the question what force and effect should be given by the courts of one nation to the judgments rendered by the courts of another nation. Very numerous decisions have been had, especially in England, relating to this question in the various forms in which it has arisen; but if we should undertake to learn from the opinions of the courts in these cases what principles had been decided, we should find ourselves in utter confusion." (Page 123, volume cited.)

And in the same decision the Court said:

"No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. The extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call 'the comity of nations.' Although the phrase has been often criticised, no satisfactory substitute has been suggested." (Page 163, volume cited.)

From Chancellor Kent's Commentaries, 1927, the following was cited:

".... 'No sovereign is obliged to execute, within his dominion a sentence rendered out of it; and if execution be sought by a suit upon the judgment, or otherwise, he is at liberty, in his courts of justice, to examine into the merits of such judgment. . . .' "

As we have said, many other cases were cited in *Hilton* v. *Guyot, supra,* but these generally involved the effect of foreign judgments, in reference to whether they can be executed or be considered as *prima facie* evidence of certain facts.

In the case which we are now considering, there is no attempt to enforce a foreign judgment before an American court. On the contrary, it is sought to have declared null and void an order of a French court, which is not in any way within our competency or jurisdiction. That order is now in force in France, but it has not been invoked here for any purpose.

We believe that the decision sought herein from the courts of Puerto Rico is beyond their jurisdictional powers. Moreover, a judgment such as is demanded by the plaintiffs would never have the effect of vacating, annulling, or modifying an order of sequestration of funds or money located in France, the order having been made by a French tribunal.

The district court committed no error in ruling that it had no jurisdiction of the case, as the same is set forth in the complaint.

The judgment appealed from must be affirmed.