Josefina Enseñat Viuda de Defendini, demandante y apelante, *v.* Mateo Defendini, demandado y apelado.

No. 5187.—*Sometido:* Junio 4, 1930. *Resuelto:* Julio 9, 1931.

*Tous Sóto & Zapater* y *J. Pérez Cordero,* abogados de la apelante; *R. López Antongiorgi* y *J. Suárez Garriga,* abogados del apelado.

El Juez Asociado Señor Texidor, emitió la opinión del tribunal.

Josefina Enseñat, viuda de Defendini, alegó en su demanda contra Mateo Defendini, ser la única y universal heredera, testamentaria, de Santos Defendini Rodríguez; que éste, a su fallecimiento, dejó, entre los bienes de su herencia, un depósito en cuenta corriente en el Royal Bank of Canada, sucursal de París, Francia, por francos 43,415.20; y que cuando la demandante intentó retirar esa suma, no pudo hacerlo, porque el demandado obtuvo una orden del Tribunal Civil del Sena, disponiendo el secuestro de la cantidad, en 1 de mayo de 1923, alegando falsamente que Santos Defendini le adeudaba cuatro mil dólares, por préstamo; que obtenido el secuestro, el aquí demandado no hizo gestión alguna para establecer la certeza de su reclamación, ni ante los tribunales de Francia, ni ante los de Puerto Rico; que Santos Defendini no tomó a préstamo a Mateo Defendini la suma indicada, ni otra alguna, ni era su deudor. Y como segunda causa de acción alegó que el secuestro de aquella cantidad ha causado a la demandante daños y perjuicios consistentes en la diferencia en el cambio, en la privación de intereses, y en las molestias, gastos y angustias sufridas por la demandante.

A esa demanda se opusieron excepciones previas; pri-

mero la de falta de hechos, que parece se fundó en la pres-cripción; y luego, como la que más interesa para este recurso de apelación, la de falta de jurisdicción. Acerca de ésta resolvió la corte declarándola con lugar. Y<sup>t</sup> contra la sentencia dictada, se ha interpuesto la presente apelación.

Analizando la demanda, encontramos en ella que la base sobre que descansan sus peticiones no es otra que la alegada nulidad o ineficacia de la orden de secuestro de fondos dictada por el Tribunal del Sena, en París, acerca de la que se alega que fué obtenida sobre la falsa alegación de deuda. De aquí se parte para solicitar que se declare que Santos Defendini, a su fallecimiento no debía nada a Mateo Defendini, y que éste carece de toda acción contra los herederos de aquél, en reclamación de la suma de $4,000 u otra cualquiera, como préstamo; que es ilegal el secuestro obtenido por Mateo Defendini, de dinero que pertenecía a Santos Defendini, y luego su sucesión, en el Royal Bank of Canada, sucursal en Francia; y que por dicho secuestro se causaron a la demandante daños y perjuicios, que debe pagar el demandado.

El litigio entero gira sobre la alegada ilegalidad del secuestro de fondos decretado por el tribunal francés. Se pide a un tribunal de Puerto Rico que declare la ilegalidad de tal secuestro; se le pide que declare la no existencia de la deuda que fué elemento indispensable para el secuestro; y se pide una indemnización que tiene por base la tan repetida ilegalidad. Este pudiera decirse, es el *leit-motif*, motivo guía, de todo el caso.

En la relación del caso y opinión, la corte *a quo,* dijo:

"Si como alega la demandante, Mateo Defendini obtuvo la orden de secuestro mediante falsas alegaciones, no cabe dudar de que para poder condenar al demandado al pago de daños y perjuicios, esta Corte tendría que resolver sobre la validez o ilegalidad de la referida orden de secuestro. Si la Corte declarase que la orden fué legalmente obtenida, entonces la segunda causa de acción, o sea la que se refiere a los daños causados a la demandante, caería de su

base; y, si por el contrario, esta corte decidiese que la orden obtenida del Tribunal de París es ilegal o nula por haberse obtenido mediante las falsas representaciones o alegaciones del demandado, estaría pasando y juzgando actos de un tribunal extranjero que un principio muy conocido de derecho internacional privado le prohibe considerar. La ilegalidad o validez de la orden de secuestro sólo puede determinarla el tribunal que la expidió, o sea el Tribunal Civil del Sena, al cual solamente se le reconoce por el derecho internacional privado la jurisdicción para anular, revocar o modificar sus órdenes o providencias. En el caso de *Uppinghouse* v. *Mundel,* 103 Ind. 238, 241, 2 N. E. 719, se establece que 'para que la parte pueda ser responsable por haber obtenido una orden de embargo, es necesario que se demuestre que el procedimiento mediante el cual se obtuvo es ilegal y opresivo de acuerdo con la ley al calor de la cual se obtuvo la orden.'

"En el caso de *Wiley* v. *Traiwick,* 14 Texas 662, la corte resolvió lo siguiente:

" 'En una acción por la expedición ilegal de una orden de embargo en otro Estado, la cuestión de si el embargo fué legal o ilegal debe determinarse por las leyes del estado en donde se obtuvo.'

"Y este principio de derecho internacional privado ha sido también reconocido y sancionado por nuestro Tribunal Supremo, según puede verse en el caso de *Casiano et al.* v. *Lucchetti,* 24 D.P.R. 114, y siguientes."

Hacemos nuestras las citas. La verdadera situación del caso fué claramente percibida por la corte de distrito.

De la demanda no aparece si la sucesión de Santos Defendini, o la demandada, se hallaba en Francia, y tomó alguna intervención en el caso del secuestro, y cuál fuera esa intervención, si ella tenía, en la fecha de la diligencia judicial citada, domicilio en Francia, o residencia allí; en suma, ninguno de los datos que permitirían hacer un completo análisis, a la luz de opiniones como la del tratadista Dicey en su obra "On conflict of laws."

En la decisión en el caso *Hilton* v. *Guyot,* 159 U. S. 113-228, se cita gran número de casos ingleses, y los de Estados Unidos, y se estudia la fuerza y efectos de las sentencias y

resoluciones de tribunales extranjeros, y el estado de la cuestión en los distintos países de Europa y América. Con respecto a las dificultades de que se halla erizada la resolución de estas cuestiones, baste copiar del argumento por los apelantes:

"Escasamente hay doctrina alguna de derecho que, en lo que respecta a su exposición formal y exacta, se halle en un estado tan indeterminado e incierto como la referente a la cuestión del valor y efecto que ha de darse por los tribunales de una nación a las sentencias dictadas por los de otra. Numerosísimas decisiones se han dictado, especialmente en Inglaterra, referentes a este extremo, en las varias formas en que ha surgido; pero si hubiéramos de tratar de sacar en limpio de las opiniones de los tribunales en tales casos los principios que han sentado, nos veríamos envueltos en una completa confusión." (Página 123, tomo citado.)

En esta misma decisión, se dice por la corte:

"Ninguna ley tiene efecto alguno, por sí sola, más allá de los límites de la soberanía de donde deriva su autoridad. El límite hasta el cual la ley de una nación, según ha sido puesta en vigor dentro de su territorio, bien a virtud de orden ejecutiva, o por acto legislativo, o por decreto judicial, se permitirá que surta efecto dentro de los dominios de otra nación, depende de lo que nuestros más grandes juristas se han conformado en llamar la cortesía de las naciones (*the comity of nations*). Aunque la frase a menudo ha sido criticada, no se ha sugerido un substituto satisfactorio." (Página 163, tomo citado.)

Cítase, además, de los comentarios de Chancellor Kent, 1927, lo que sigue:

". . . 'Ningún soberano está obligado a ejecutar, dentro de sus dominios, una sentencia dictada fuera de éstos; y si se trata de ejecutar la sentencia mediante pleito, o en otra forma, está en libertad, por sus tribunales de justicia, de examinar los méritos de tal sentencia. . .'" (Página 188, tomo citado.)

En este caso *Hilton* v. *Guyot*, se hace referencia, como dejamos dicho, a otros muchos casos; pero en la generalidad de ellos se trató de la eficacia de sentencias de tribunal ex-

tranjero, ya para producir efecto de ejecución o para ser tenidas como evidencia *prima facie* de ciertos hechos.

En el caso que decidimos, no se trató de hacer valer ante tribunales americanos una sentencia extranjera. Por el contrario, se pretende que se declare la ineficacia o la ilegalidad de una resolución de un tribunal francés, que no está, en forma alguna, en nuestro fuero, o bajo nuestra jurisdicción. Esa resolución, por ahora, está surtiendo efecto en Francia, pero no ha sido invocada aquí para ningún fin.

Creemos que la declaración que se pretende obtener de los tribunales de Puerto Rico está fuera de su poder jurisdiccional. Es más, una sentencia como la pide el demandante no tendría nunca la fuerza de levantar, anular o modificar la orden de embargo o secuestro relativa a fondos o dinero que se halla en Francia, siendo aquella orden dictada por un tribunal francés.

No incurrió en error la corte de distrito al declararse sin jurisdicción sobre el caso, en la forma en que lo plantea la demanda.

*Debe confirmarse la sentencia apelada.*