vided, if he knowingly permitted his own child to enter upon or remain in such an establishment.

The power of parents over their children are and ought to be very great, and the promptness of proper and natural parental affection are usually found sufficient to impel them in the proper line of duty toward the child, but if this fails, the state is not powerless, if it need be, to impose such penalties as are deemed necessary for the protection of the child, upon the parent or any other person for a neglect of duty in this respect.

That the parent or guardian may consent that spirituous liquors may be sold to the child or ward and thereby exempt the seller from liability to criminal prosecution, is in no manner inconsistent with the right and power of the state to give a civil action against the seller notwithstanding the consent of the parent or guardian, and to give such an action against the keeper of such establishment on his bond whenever such person knowingly permits a minor to enter upon or remain there.

There is no such case of necessity shown in this case as could possibly relieve the makers of the bond from the liability voluntarily assumed by them, and the judgment is affirmed.

Stayton, J.

---

## S. JACOBS & CO. VS. ISAAC E. CRUM.

### IN SUPREME COURT, TYLER TERM, 1884.

*Practice—Motion*—A motion to exclude from the jury a special issue in the case simply asks the court to determine whether there is any evidence tending to support such issue.

*Charge.*—Where there is evidence tending to establish an issue in the case, it is the province of the court to submit the law applicable to it under the pleading; but where there is a want and absence of such evidence, it is often misleading and erroneous to do so.

*Attachment—Malice.*—Malice in suing out a writ of attacment may be implied from want of probable cause.

*Principal and Agent.*—As a general rule the principal is not liable in exemplary damages for the unauthorized malicious acts of the agent, still, if he ratifies and accepts such acts of the agent, he thereby becomes liable for the damages, exemplary as well as actual, resulting from the act.

*Malice—Advice of Counsel.*—The fact the attachment was sued out on the advice

of counsel, fairly obtained, upon information of the facts, does not as a matter of law repell the inference of malice, or constitute a good protection to the party suing out the writ.

*Attachment—Exemplary Damages.*—See the opinion in this case for the rules controlling the question of exemplary damages for maliciously suing out a writ of attachment, and, for evidence held insufficient to support a verdict according such damages.

Appeal from Tarrant county.

STATEMENT.

The mercantile firm of S. Jacobs, Bernheim & Co. plaintiffs, on the 15th day of February, 1882, brought suit in the district court of Tarrant county, against Isaac E. Crum, defendant, on a promisory note to them for $1598.90, dated August 17, 1881, due March 1, 1882, and bearing interest at the rate of 10 per cent. per annum from maturity. An original attachment was at the same time sued out on the affidavit of S. B. Mayer, agent for the plaintiffs.

The defendant pleaded a general demurrer and general denial, and spcially in reconvention for the alleged wrongful and malicious suing out of the attachment, $3000 as actual damages, and $10,000 as exemplary damages. The jury rendered a verdict for defendant for $3000 actual damages and $6000 vindictive or exemplary damages. Judgment was rendered for the defendant for $9000, and it was further adjudged by the court that the plaintiffs failing to recover and it appeared to the court that there is $1005.85 in the hands of the clerk, that the attachment be discharged and the money paid over to the defendant as a credit on the judgment. Defendant afterwards filed a remitter from the verdict for actual damages, and judgment of $1800, being the amount, principal and interest, of the note sued on.

Plaintiffs' motion for new trial was overruled, and they bring the case here by appeal.

The grounds alleged for suing out the attachment, in Mayer's affidavit are : "That defendant has disposed of his property in part, with intend te defraud his creditors, and that he is about to convert a part of his remaining property into money for the purpose of placing it beyond the reach of his creditors."

The only allegations in the defendants plea on which it sought to base a recovery for exemplary damages are contained in the following extracts : "That the said S. B. Mayer, agent of plaintiffs, in suing out said writ of attachment, did so under the direction and at

the instance of said plaintiff. That said attachment was wrongfully and maliciously sued out by said plaintiff, acting through their said agent Mayer. That there were no good grounds, or good or valid cause in law, for suing out said attachment." And after traversing the grounds of attachment set out in Meyers' affidavit, the special answer or plea in reconvention proceeds : "That the said S. B. Mayer, agent as aforesaid, well knew at the time he sued out said writ of attachment that there was no valid cause therefor, but that he did the same maliciously, for the purpose of injuring and oppressing the defendant ; and that plaintiffs, knowing there was no legal cause for issuing said attachment, and for the purpose of injuring and oppressing this defendant, instructed said S. B. Meyer to have said attachment issued and levied on the property of this defendant, and that plaintiffs, since the issuance of said writ, and knowing the malicious intent of the said S. B. Mayer in suing out said writ of attachment, have approved and ratified the acts of the said agent as aforsesaid." The defendant's plea also sets forth that before and at the time of said levy of the writ, he was a merchant doing business in the village of Oak Grove ; that by reason of the wrongful and malicious suing out and levying of the attachment, "he has been broken up and ruined as a merchant, and his credit lost and desstroyed."

### OPINION.

It is assigned as ground for error, that the court erred in overruling plaintiffs' motion (made after defendant had closed his case on his plea in reconvention) to exclude from the jury the subject of exemplary damages, because there was no evidence tending to support the allegations of defendant's plea with respect thereto.

A motion of this character is assimilated to a demurrer to evidence, but it is not, we conceive, equivalent to it. A demurrer to evidence admits every fact and conclusion which the evidence conduces to prove. (Hughes vs. Christy, 26 Texas, 230.) The demurrant submits the result of his case to the court's judgment on the evidence, as a question of law, as to its legal effect, and if the demurrer is sustained the judgment of the court upon the case made by the evidence follows.

This motion simply invokes the court to determine whether there

is any evidence as to certain specified facts constituting the defendant's grounds for exemplary damages, but the plaintiffs do not in their motion, tender any issue, as by demurrer, to evidence, on which the court might render judgment on the effect of the evidence thus submitted for consideration. Under this view the court might properly have declined to consider the motion as being an irregular and irrelevant proceding, and it was not error to overrule it. Besides, the bill of exceptions shows only that the motion was overruled, but it does not elsewhere appear than in the motion itself, at what stage of the trial, or under what circumstances the motion was made to withdraw the subject of exemplary damages from the consideration further of the court and jury.

It is assigned as error that "The court erred in not giving the fourth special instruction asked by the plaintiffs, and not excluding by its charge the question of exemplary damages from the jury because there was no evidence to support a finding therefor, and because there was no evidence that at the time of suing out the attachment, plaintiffs or their agent knew the grounds on which the same was sued out to be untrue in fact, or that plaintiffs, knowing the grounds to be false, ratified and adopted the malicious suing out of the writ by their agent."

The fourth special charge asked by plaintiffs and refused is as follows. "The defendant claims $15,000 as examplary or punitory damages for the alleged wrongful and malicious suing out of the attachment, and charges plaintiffs knowing the grounds on which the attachment was sued out as set forth in the affidavit to be untrue, instructed and directed said proceeding; that S. B. Mayer, acting as their agent in suing out the attachment, sued out the same knowing said grounds to be untrue, and that plaintiffs ratified and confirmed the malicious suing out of the attachment by their agent, there is no evidence to sustain these grounds and you are instructed not to consider any evidence of exemplary or punitory damages at all."

Where there is evidence tending to establish an issue in the case it is the province of the court to submit the law applicable to it under the pleading; but where there is a want and absence of such evidence, it is often misleading and erroneous to do so. (Austin vs. Talk, 20 Texas 167; Andrews vs. Southwick, Id. 118; McGreal & Wilson, 5 Texas, 429.) In this case there was evidence which tended to establish such of the facts relied on for exemplary damages as the

jury might have construed to support the defendant's claim therefor.
If S. B. Mayer, acting as plaintiffs' agent in suing out the attach-
ment, did so knowing the grounds to by untrue, and that plaintiffs
ratified and confirmed the malicious suing out of the attachment by
their agent, the plaintiffs would be liable to exemplary damages.

The evidence in behalf of defendant tended to prove the want of
probable cause to sue out the attachment on the ground relied on
in the affidavit. Malice in suing out the writ may be implied from
want of probable cause. (Drake on Attachments, sec. 732a and note
4 to sec. 732.)

There was evidence also from which the jury might have deduced
the conclusion that plaintiffs adopted the act of their agent after ob-
taining a knowledge of the facts. The evidence showed that the
plaintiffs were advised at once by their agent Mayer that he had at-
tached defendant's goods and land ; that they telegraphed Mayer to
attend the sale of the goods, which were sold March 6th, under the
attachment proceedings, and buy in the goods. After acquiring
such knowledge of the existence of his attachment suit and the pro-
ceedings had and to be had upon it, and as parties plaintiff to it, be-
ing chargeable with knowledge of the grounds on which the attach-
ment rested, it was a circumstance tending to show that they may
have learned the facts on which their agent had procured the attach-
ment, and ascertained whether it had been rightfully or wrongfully
sued out. Such negative circumstantial evidence, though it is slight
and inconclusive standing by itself, is entitled to be considered and
weighed by the jury in determining from all the facts and circum-
stances, whether the plaintiffs knew of the malicious suing out of
the writ when they acquiesced in the action by subsequently prose-
cuting the attachment proceedings, and adopting the acts of this
agent, by causing, under the levy of the writ, the goods to be sold
and their participation in purchasing at the sale of them. The
plaintiffs, under such circumstances must be held to have been
put on inquiry concerning the facts under which their agent had
acted in thus seizing the defendant's property, and of ascertaining
whether there was probable cause, and if the facts were such as he
might be supposed to have readily ascertained by inquiry, the jury
would have been at liberty to have drawn the conclusion that he did
obtain a knowledge of the supposed want of probable cause and the
malice that would be implied which existed when the agent sued out

the writ. Such evidence would, it is true, have been circumstantial and such as would be subject to be rebutted by evidence to show that they did not in fact learn these facts as to the malicious character of the proceeding, but it would nevertheless have been legitimate evidence tending to establish the defendant's case which the court was not at liberty to disregard and treat it as being no evidence whatever or evidence which was wholly insufficient. In Blum vs. Gaines, (57 Texas 142) it was said "There was evidence which called for a charge upon exemplary damages, and whether it was sufficient to support the claim therfor, was for the jury looking to all the facts of the case, unless so clearly insufficient that the court could so declare it."

The plaintiffs adopted the act of their agent Mayer by retaining the benefits which the attachment procured for them, and by continuing to prosecute the suit without dismissing the attachment, and there is evidence of a circumstantial character which tended to establish the fact that they did so with knowledge of the facts and circumstances under which Mayer had procured the issuance of the writ. G. H. & S. A. R. R. Co. vs. Donahoe, (56 Texas 166,) where it was held "that notwithstanding the general rule that the principal is not liable in exemplary damages for the unauthorized malicious acts of the agent, still, if the principal should ratify or accept such acts of the agent, it thereby becomes liable for the damages as well exemplary as actual, resulting from the act."

In this case the plaintiffs accepted the acts of their agent in suing out the writ and continued to prosecute their suit and the attachment proceedings throughout the case to its final disposition under circumstances from which it might be reasonably inferred that they knew at least some of the facts attending the suing out of the attachment, and we think the court did not err in refusing the plaintiffs' fourth special charge and in not excluding the question of exemplary damages from the jury. It was their province to pass upon the evidence on that subject, if any there was, tending to establish defendant's plea in reconvention, and after they had done so, it was the province of the court to review their action, and such evidence cannot be disregarded so as to exclude its consideration, unless it amounts in law to no evidence whatever proper for the jury to consider on that issue-

The fifth assignment is, that the court erred in not giving the fol-

lowing instructions : "The advice of counsel, given on a case truly stated, and the advice honestly pursued, whether correct or not, will repel any inference of malice and constitude a good protection for the client.   If, therefore, the attachment was sued out on the advice of connsel, fairly obtained, upon information of the facts communicated by the agent of the plaintiffs at the time, they will not be liable for exemplary or punitory damages."

The court did not err in refusing this instruction for several reasons.   Malice being an essential ingredient in the defendant's plea in reconvention for exemplary damages, it was a fact to be established from all the facts and circumstances developed in evidence, and the jury might properly consider the circumstances which attended the action, conduct and conversation of Mayer at the time of suing out the writ of attachment, including the conversation with and advice obtained from his attorney.   It would have given undue prominence to such evidence, and have been calculates to mislead the jury thus to have singled out the particular evidence bearing on the effect and weight to be given it.

Where the court has sufficiently instructed the jury upon the law of the case, it is proper to refuse instruction applicable to isolated facts or parts of the evidence which, though correct in point of law, would have the effect to give the matter to which they relate, an undue prominence in the minds of the jury. (Gray vs. Burke, 19 Texas 223.)

The evidence before the jury was of a character which, it seems to us, did not warrant the court in giving the instruction because it did not sufficiently exclude the idea that nothwithstanding the advice of counsel given on a communication of the facts by the agent of the plaintiffs and that the attachment was sued out on that advice ; notwithstanding the advice was pursued, yet the agent may have been influenced by some improper motive which the law would characterize as malicious, or that notwithstanding his intercourse with and the advice of his counsel, may have known that the grounds of his attachment were unfounded in fact, and did not warrant the issuance of an attachment.   It is not true as a legal proposition, as we conceive, that if "an attachment is sued out on the advice of counsel, fairly obtained, upon information of the facts communicated at the time," that the inference of malice is thereby repelled, and "constitutes a good protection" for the party suing it out, and that

he may not, therefore, be liable for exemplary damages. The question of malice is for the jury, to be determined from the facts and circumstances proved. It may be implied from the want of probable cause, the implication to be repelled, however, by facts and circumstances indicating a fair and legitimate purpose and honest pursuit of a claim believed to be just. (Culberson vs. Cabeen, 29 Tex. 256.) The circumstances and facts attending the agent's consultation with and advice from the plaintiff's attorney constituted, together with any other evidence leading in the same direction, such rebutting evidence, and was entitled to be considered by the jury in connection with the whole evidence, in that light. It was not, however, evidence of a conclusive character which could exclude from consideration other evidence bearing upon the question of malice, or which was entitled to be treated as an isolated and decisive fact which determined the issue of malice, nor to be regarded otherwise indeed than as one of the circumstances in evidence to be viewed and watched in connection with and in relation to the whole evidence of the entire transaction.

It would often occur in cases of this character, that the fact of the party acting under advice of counsel, upon facts fairly stated, might nevertheless have been guilty under other facts developed in the case, of oppression and malice, and therefore his defence against exemplary damages could not be made available because of the advice given and followed.

There was evidence which tending to show that Mayer contemplated the proceding by attachment before he was advised by counsel to take that course. This advice was given in the morning of the day of the issuing of the writ. The night before, a witness testified, that he, Mayer, said "he wished he had a sheriff then." Besides that, he wrote on the day of the issuance of the writ, to plaintiffs as follows :

" FORT WORTH, February 15, 1882.
*Messrs. S. Jacobs, Bernheim & Co.*, Galveston :

Gentlemen —I will now give you the particulars, concerning I. E. Crum. After receiving the letter and telegram I called upon Templeton & Carter and consulted with them. We concluded to take one of their men along with deeds of trust and other papers. We arrived there last evening, and asking what he could do for me in cash as to his letter he said nothing at present, but would try and

have $300 ready for us March 1. I then questioned him as to his cattle, and he replied that he sold them some time ago for $1400 with which he paid his creditors, but failed to tell me whom he paid. I then asked for a deed of trust and other securities, and I would be willing to extend his time until next crop time. Then he answered that his land which he now has, amounting to 320 acres, was purchased from a party by the name of Huson, residing in Johnson county, to whom he gave a vendor's lien. That settled that, and he claims one acre of the land on which is situated his store-house, dwelling and barn and other out-buildings. Finally, I made him a proposition that if he would secure my account by any responsible party I would be willing to make this proposition : to take $300, payable on March 1, and $200 each month, with ten per cent interest added. He didn't know if he could succeed in doing that. I promised to meet him at noon to-day. I made this proposition so as to make him believe that I wouln't take steps towards attachment, and at 8 a. m. I was on my way back here again, and stated these facts to the lawyers and they concluded that there was no time to be lost, because if he could not succeed in getting his sureties in, his Fort Worth creditors might get ahead of us, and so we issued papers on the following grounds : He claims his stock amounting to $3000, his book and note account $1500, on which he owes but $4000. Now my judgment as to his stock is what I telegraphed you. It will not bring more than enough to cover our claim, for his shelves are nearly empty, his boots and shoes are mostly gone, his groceries are very low and his stock of dry goods are in a like fix. The biggest part are his clothing. He admitted to me that he intended to sell out his entire stock and quit business,and has a card to that effect hanging up, "At cost—dry goods, clothing, etc., to close out stock." His cattle, as I told you, he sold, and he has nothing to give me to secure my debt. Well, we got papers, and the constable is at his place. We attached that land and stock about noon. Mr. Crum came to town and has since been trying to accomplish something. There was to be a creditor's meeting at 2 p. m., and the Fort Worth creditors wanted to secure my account, but at this hour, 4 p. m., they have failed to come. Mr. Evans, of E. & M., asked, during my absence, Mr. Carter, how much I would take for my claim in cash, and he told him he would consult me, but also have not seen him. I advised you of all these facts by telegraph. I have seen Crum once

since, and he was in company with Casey, of Casey & Swasey, and they went to a lawyer's and no doubt are trying to see what can be done. Rest easy, we are secured and will get our money. L. & L. Blum are interested to about $250; E. & M., $1200, and the balance among others here. We didn't act any too soon, and my opinion is, he wouldn't have held out much longer, for he tried to convert his stock into cash and let his creditors whistle. Will keep you posted of any further developments. Yours, etc.,

S. B. MAYER.

This letter, while it may be consistent with the fact that the writer of it was actuated by anxiety and alarm for the safety of plaintiffs' debt in the delusive hopes he held out to Crum that he would take security and be content not to attach, and although it is also consistent alike with possibility that he believed he had probable cause for suing out the writ, and was influenced by no improper motive, there are statements contained in it that allow of a different interpretation. The burden of the letter indicates an apprehension that the defendant would sell out his goods; that they were not of sufficient value to pay all his debts, and that unless he attached at once some creditor, more fortunate than plaintiffs, might attach and thus, as he expresses it, "get ahead" of plaintiffs. He states distinctly that he sued out the attachment on the grounds that Crum's estimate of his means to pay his debts, amounting to $4000, was exaggerated, and that the defendant's stock of goods would not bring more than enough to cover plaintiffs' claim. He pointed out the further danger to be apprehended from defendant's statement to him of his intention to quit business, in connection with his card hung out advertising , "At cost—dry goods, clothing, etc., to close out stock." Some other matters are stated to show the failing circumstances of defendant, but no fact was distinctly or pointedly referred to, showing that defendant was attempting to, or had fraudulently disposed of any of his property to the prejudice of his creditors. If the agent of the plaintiffs acted upon considerations of fear on account of the failing circemstances of the defendant and sued out the attachment merely as a prudential effort to obtain the advantage of being early in the contest among creditors, to obtain the floating plank in the midst of the threatened wreck, by being the first to issue an attachment, and if he had no probable cause to believe the facts stated in his affidavit for attachment, such evidence would cer-

tainly evince that he was acting under an improper motive, and the law would deem it malicious and unauthorized.

Notwithstanding the advice of counsel the evidence above referred to, and his declared purpose to merely amuse Crum with proposition of security in order to lull his fears lest an attachment should be sued out, where proper to be considered on the question of malice, and consequently the instruction asked to be given was properly refused. Where the evidence in an action for malicious prosecution, shows that the defendant acted from motives of private interest, and without probable cause to support the prosecution, his action under the advice of counsel will not exempt him from liability. (Glascock vs. Bridges, 15 La. Ann. 672.)

The views we have expressed are to our minds sufficiently satisfactory on the question presented without suggesting that the evidence perhaps on the subject of the advice of counsel did not justify the instruction, if the doctrine stated in it has been otherwise applicable. To render its application pertinent, it should have appeared from the evidence that Mayer, after having stated fairly to his counsel all the acts in regard to the grounds relied on for an attachment which he knew were capable of proof, submitted for that counsel's judgment and determination whether upon such facts he would in law be justified in suing out an attachment, and that on being informed that he would be so warranted, he acted upon such advice.

The purport of the conferences between Mayer and counsel was general and had reference mainly to the question of expediency as to the best course to be pursued for the interest of the plaintiffs after a statement of all the facts. It is true that the evidence showed that the attorney advised that an attachment would be, and advised the pursuit of that remedy, and that Mayer was willing to follow whatever course the attorney might suggest as the best and proper, but it does not conclusively appear, that Mayer in any special manner submitted for the opinion of the attorney whether the facts stated to the latter warranted an attachment, and that he sought such an opinion with the intention of being satisfied on that question, and of being controlled in his action by the opinion that might be given, irrespective of any preconceived intention or conclusions of pecuniary policy he may have entertained, to sue out the writ if his views of financial expediency required it.

It is assigned as error that the court refused the following instruction : "Althongh the facts charged in the affidavit may not be true, yet if there was probable cause for believing them to be true, the plaintiffs will not be liable for exemplary damages ; probable cause is such a state of facts and circumstances as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably and without prejudice upon the facts within his knowledge, to belive that the grounds charged were in fact true, or a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the facts charged are true, and if the jury find from the evidence that at the time of suing out the attachment the defendent had disposod of a part of his property, retaining the use and possession thereof, known to the plaintiffs or their agents, they are instructed that this constitutes probable cause for the charge in the affidavit that defendant has disposed of a part of his property for the purpose of defrauding his creditors."

This instruction was properly refused because there was no evidence tending to prove that Mayer had any information at the time of suing out the writ of attachment that defendant had retained the use and possession of the cattle sold to Brown. The evidence of Mayer on the stand, his consultations with Carter detailed in evidence by both of them, and his letter to the plaintiffs are alike silent concerning the fact in question and they create a strong implication in connection with the fact of so short a time elapsing within which he had the opportunity of inquiring, and the absence of any circumstance indicating such knowledge on his part. that when he sued out the writ he had not learned anything concerning the defendants retaining the use and possession of any of the cattle after their sale. (Culbertson vs Cabeen, 29 Texas 256 ; Drake on Attack., 741.)

It is not error to refuse to instruct the jury that if they believe a certain fact from the testimony they should find for the plaintiff, when the evidence did not warrant the assumption of the existence of such fact. (Hatch vs. De La Garza, 22 Texas 176.)

It it assigned as error that the court erred in not giving plaintiffs' second charge on the facts involved in the cause tending to show that Crum had made a fraudulent disposition of property. The instruction asked is as follows : "If the defendant had disposed of his cattle at the time of suing out the attachment, retaining the possession and

using the same as his own, such facts constitute fraud in law and justified the suing out of the attachment on the ground that he had disposed of a part of his property for the purpose of defrauding his creditors, and in that case the defendant is not entitled to recover any damages whatever.",

This proposition is stated without the qualification that while such facts raise a prima facia presumption of fraud in such sale it is not conclusive, and is subjected to be rebutted by proof explanatory of the facts and thus render the sale unobjectionable so far as the imputation of fraud is concerned. The instruction asked for makes the fact of selling and remaining in possession and using the property, conclusive of fraud against creditors. There was evidence strongly tending to rebut any inference of fraud in the transaction, and it would have been erroneous to have given the instruction without submitting to the jury to determine whether under the evidence in the case the defendant had repelled by his evidence the presumption of fraud which would otherwise arise. (Gibson vs. Hill, 21 Texas 225 ; Howerton vs. Holt, 26 Texas 28.)

The following is also assigned as error : " The court erred in the statement and reiteration to the jury that the adoption and ratification by plaintiffs of the suing out of the attachment by their agent, after being informed of the facts, would make the plaintiffs liable for exemplary damages if the attachment was sued out wrongfully and maliciously : A.—Because there was no evidence of malice on the part of the agent. B.—There was no evidence of any knowledge or information on the part of the plaintiffs respecting any malice of the agent. C.—There was no evidence of any adoption or ratification by the plaintiffs of auy malice of the agent. D.—Because calculated to mislead the jury into the belief that the mere undertaking to prosecute to judgment a suit instituted by original attachment of an agent would make the principal liable for vindictive damages when the agent had acted maliciously.

We think the court did not err in thus charging the law. We have elsewhere, hitherto, in this opinion indicated, sufficiently, perhaps, reasons for sustaining this portion of the charge as not being merely hypothetical and unwarranted by evidence.

The remaining grounds of error assigned are as follows :

"The verdict is contrary to and unsupported by the evidence, in assessing exemplary damages."

"The verdict is grossly excessive, both as to amount of actual and exemplary damage, and was obviously actuated by passion and prejndice, regardless of law and evidence."

"The verdict is contrary to law and evidence--to truth and justice."

"The court erred in overruling plaintiffs' motion for new trial."

We are of opinion that the verdict for exemplary damages is not supported by sufficient evidence to sustain it. The burden was upon defendant to show by evidence reasonably sufficient to satisfy the mind that plaintiffs' agent acted maliciously in suing out the attachment, and to do so it must appear that he did so either from express malice relating to and directed against the defendant, or from malice which would be implied by law arising from the want of probable cause, or else that it was made to appear that he acted from some motive which the law would characterize as an improper one. Clearly there is a want of evidence to show and personal malice or ill will on the part of Mayer which induced his action. Then, are the circumstances such as from which malice could be implied for the want of probable cause? The ground of attachment is, "that the defendant has disposed of his property in part with intend to defraud his creditors, and that he is about to convert a part of his remaining property into money for the purpose of placing it beyond the reach of his creditors." Does the whole evidence warrant the reasonable conclusion that Mayer did not believe the facts stated in the affidavit to be true, but that he sued out the writ regardless of, and indifferent to the truth in order to subserve a motive other than to avail himself of a faithful and honest use in good faith of attachment process where it rightfully might be sought for ? We do not think it does.

"Exemplary damages are allowed when a wrongful act is done with bad motive ; or so reckless as to imply a disregard of social obligation ; or where there is negligence so gross as to amount to misconduct and recklessness. If a wrong is done wilfully, that is, if a tort is committed deliberately, recklessly, or by wilfull neglgence, with a present consciousness of invading anothers' right, or of exposing him to injury, an undoubted case is presented for exemplary damages. To enable a jury to exercise their discretion wisely for the purpose for which such damages are allowable, all the facts and

circumstances which belong to the principal transaction and tend to develop its character, should be submitted to them.

"These damages are allowable only when there is misconduct and malice, or what is equivalent to it. A tort committed by mistake, in the assertion of a supposed right, or without any such recklessness or negligence as evinces malice or conscious disregard of the rights of others, will not warrant the giving of any damages for punishment where the doctrine of such damages prevail.,' (1 Southerland on Damages 724.)

"That which is done contrary to one's conviction of duty, or with a wilfull disregard of the rights of others, whether it be to compass some unlawful end, or some lawful end by unlawful means, or to do a wrong and unlawful act, knowing it to be such, constitutes legal malice." (Drake on Attachment, sec. 733.)

These elements for the maintainance of an action for exemplary damage clearly constitute the belief and intention of the wrongdoer, a controlling ingredient, therefore, although there may not exist good cause for suing out an attachment, yet if the evidence concerning all the circumstances attending it are consistent with and show that it was sued out under an honest belief of the trurh of the grounds relied on based on reasonable grounds, the inference of malice which would otnerwise arise, is repelled, and no recovery for exemplary damages could be had. (Culbertson vs. Cabeen, 29 Texas 256; Drake on Attach., secs. 733-733.)

Such belief, however, as will thus protect against the consequences of the wrong, where that belief has been acted on in suing out wrongfully an attachment, must have had a reasonable basis for its existence; there must be some reason for believing the grounds to be true. (Drake on Attach. sec. 737, citing Schrimpf vs. McArdle, 16 Texas, 372.)

The rule is thus stated in Culbertson vs. Cabeen, 29 Texas, 256, "But malice may be implied from the want of probable cause, the implication subject to be repelled, however, by facts and circumstances indicating a fair and legitimate purpose and honest pursuit of a claim believed to be just."

To rebut malice the defendant may show any pertinent facts. In such case it is a material question whether the defendant acted prudently, wisely and in good faith, and for this purpose, information

on which he acted whether true or false, is original and material evidence." (1 Southerland on Dam. 757.)

Applying, therefore, the principles and rules of law which have been stated, to this case, as it devolved on the defendant to establish malice in its legal sense against Mayer, it is essential to the correctness of the verdict for exemplary damages that the facts developed by the evidence were of a character to reasonably establish the fact that Mayer did not believe the facts in his affidavit to be true, or that if he did so believe that his belief was formed upon facts and circumstances, that did not justify him in making up an opinion upon them in regard to the truth or the falsity of the charge imputed to defendant as ground for attachment.

The doctrine recognized as correct by Drake in his work on Attachment, secs. 723--733 is that this kind of action is governed by the principles of the common law applicable to the actions for malicious prosecutions, and the cases quoted from, decided in several of the states, show that such is the accepted rule. That they recognize the common law principle applicable to actions for malicious prosecutions.

Drake remarks, (sec. 736) "these cases are equivalent to a recognition of the common law principle we have been considering ; for it is admitted that the plaintiffs' belief on proper grounds would be sufficient to protect them from a recovery of those damages which but for peculiar statutes would be authorized by the cemmon law, and could be recovered only on common law grounds."

The expression as to the truth of the grounds on which it was issued contained in his letter to plaintiffs written on the day of the issuance of the writ indicate Mayer's belief that the defendant "tried to convert his stock into cash and let his creditors whistle;" in other words, to sell out in order to defraud his creditors. The letter indicates the facts and grounds of his belief, and it contains an intimation that his opinion was influenced in a degree by the defendant's having sold his cattle, and failed to tell him who of his creditors he had paid with the proceeds of the sale ; distrusting apparently the truth of the statement of defendant that he had applied the proceeds to the payment of his creditors. His opinion seems also to have been influenced by the fact that the defendant at that time was

closing out his stock at cost, and admitted that he intended to sell out his entire stock and quit business.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Mayer went to Fort Worth and took the advice of counsel, in pursuance of which he went to the defendant with the intention, seemingly, in good faith, to obtain security for the debt and extend time, instead of proceeding immediately by attachment. The next day he returned to Fort Worth and submitted the facts to his attorney and was advised to proceed at once by attachment. "The advice of counsel as to acts usually thus influenced is admissible at least to prevent exemplary damages." (1 Southerland on Damages, 747, citing numerous authorities.) We think that the verdict for exemplary damages is not sufficiently supported by the evidence, and acting upon the rule as to new trials by the supreme court as cited in H. & T. C. R. R. Co. vs. Schmidt, 51 Texas 236 ; Chandler vs. Heckland, 22 Texas; 42; G. H. & S. A. R. R. Co. vs. Bracken, 50 Texas 71, we conclúde that the judgment ought to be reversed and the caure remanded.                                    Walker, J.

Report of the commissioners of appeals examined, their opinion adopted and the judgment reversed and the case remanded.

Willie, C. J.