### L. W. CAROTHERS v. McILHENNY Co. ET AL.

(Case No. 5221.)

1. ATTACHMENT — DAMAGES.— If an attachment be wrongfully sued out upon a ground untrue in fact, damages may be recovered though there existed probable cause.

2. MALICE.— In a legal sense, any unlawful act done wilfully and purposely to the injury of another, is, as against that person, malicious. In this sense it does not imply malignity or corruption in the proper use of those terms; but any improper motive actuating one who sues out a writ of attachment renders the act malicious.

3. PROBABLE CAUSE — EVIDENCE.— In a suit for damages for wrongfully and maliciously suing out an attachment, the fact that defendant had, before applying for the writ, heard that some other creditor was about to attach the property, constitutes of itself no ground of defense.

4. ATTACHMENT — EVIDENCE.— In a suit for damages, brought by one whose goods had been attached, and a portion of which had been sold by the officer who attached, without unboxing them, after the writ was levied and before sale, an invoice of the goods taken twenty days before the seizure, in connection with the plaintiff's testimony as to the value of the stock seized, was proper evidence bearing upon the issue as to whether they had been improperly sacrificed by the seizure and sale.

5. CASES FOLLOWED.— Stark v. Whitman, 58 Tex., 375; and Houston & T. C. R. Co. v. Graves, 50 Tex., 200, followed as to jurisdiction.

APPEAL from Milam.  Tried below before the Hon. H. D. Prendergast, Special Judge.

This was a suit brought by L. W. Carothers, in Milam county, against the McIlhenny Company, a corporation doing business in Harris county, and E. G. James, B. S. Pillows and W. B. Walker, citizens of Travis county, as sureties on the attachment bond of said corporation, for the recovery of about $62,377.53 as actual and exemplary damages for the alleged wrongful and malicious suing out by said McIlhenny Company, levy of and sale under an attachment of plaintiff's stock of goods.  The attachment complained of was sued out of the district court of Travis county, state of Texas, and levied on the stock of goods belonging to plaintiff, at Thorndale, in Milam county, in said state.  The record does not contain plaintiff's original petition, the same being superseded by his first amended petition, filed April 17, 1883.  It would seem from the pleadings of the defendants in the record that Wyatt Lipscomb, S. A. Wallace, S. B. Newman, A. Harlan and A. J. Hall had been made defendants in the plaintiff's original petition, as the defendants in their answer, filed April 22, 1882, except to the joinder of said parties with them as co-defendants.  It may be inferred from the briefs of the parties that those defendants were the sheriff of Milam county and his sureties, and that they were permitted as parties in the amended petition.

The defendants filed pleas of privilege, objecting to the jurisdiction of the district court of Milam county, which were overruled; also a general denial, and other pleadings which need not, for the purposes of this appeal, be specially noticed.  The trial resulted in a verdict and judgment for the defendants, from which the plaintiff prosecutes this appeal.

*E. H. Lott*, for appellant, cited: Neil v. Keese, 5 Tex., 23; Abbott's Tr. Ev., p. 306, sec. 20; p. 307, sec. 21; p. 310, sec. 23; Diana v. Fielder, 12 N. Y., 40; 2 Greenl. Ev., secs. 253, 254, and note, p. 276 (8th ed.); Walcott v. Hendrick, 6 Tex., 405, 417, 418, 419, 420; Culbertson v. Cabeen, 29 Tex., 247; Weaver v. Ashcroft, 50 Tex., 445; Smith v. Sherwood, 2 Tex., 460; Blum v. Davis, 56 Tex., 427, 428; Punchard v. Taylor, 23 Tex., 425; Weaver v. Ashcroft, 50 Tex., 427–445; Sparks v. Dawson, 47 Tex., 144; Linn v. Wright, 18 Tex., 337.

*A. J. Peeler* and *Maxey & Fisher*, for appellee, cited: R. S., art. 1198, cl. 8; Hubbard v. Lord, 2 Tex. Law Rep. (No. 1), 44–46; Coo-

ley on Torts, 459, 460, 461; id., 129, and p. 468, note 7; Erskine *v.* Hohnbach, 14 Wall. (U. S.), 616; Saracool *v.* Boughton, 21 Am. Dec., 181 *et seq.*, and note on p. 190; Blum *v.* Davis, 56 Tex., 429; Erwin *v.* Bowman, 51 Tex., 518.

WALKER, P. J. COM. APP.— It is assigned as error that the court erred in the first and sixth paragraphs of the charge. The first is as follows: " If the attachment was wrongfully sued out and without probable cause, then the McIlhenny Company and the sureties on the attachment bond are liable for the actual damages sustained by the plaintiff by the issuance and levy of the attachment." This proposition is incorrect in this, that if the attachment was wrongfully sued out upon a ground that was untrue, the plaintiff would be entitled to recover damages, even though there existed probable cause for suing it out. In another part of the charge the court qualified the force of the above proposition as follows: " The ground on which the attachment was sued out was that L. W. Carothers was about to dispose of his property with the intent to defraud his creditors. If this was true, Carothers is not entitled to damages; if false, he is entitled to actual damages."

The sixth paragraph of the charge above referred to, together with others that follow it, defines the elements which the court deemed requisite to recover on, as for exemplary damages, although no discrimination in terms seems to have been made by the court explanatory of the difference between actual damages and exemplary damages. The sixth, seventh and eighth paragraphs of the charge are as follows: " 6th. It is also alleged by plaintiff, L. W. Carothers, in this suit, that the attachment was maliciously sued out without probable cause for suing it out. 7th. The malice here meant is not personal ill-will, but it means an intention to injure and harass the defendant in that suit, L. W. Carothers. 8th. Probable cause is the existence of such fact or facts as would induce a man of ordinary prudence to resort to an attachment to secure his debt; and if an affidavit for attachment had been made before the affidavit was made by the agent of the McIlhenny Company against L. W. Carothers, and Hendricks knew of it, then this was probable cause for suing out the attachment."

As the court did not in its charge define and explain to the jury the distinctive difference that exists between the grounds on which the plaintiff may have been entitled to recover damages as actual damages, and those upon which he may have been entitled to recover, in addition thereto, punitive or exemplary damages, there is

more reason to apprehend that the jury may have been confused and misled in respect to the rule which the court perhaps intended by the charge to give them by which to determine whether the plaintiff was entitled to recover actual damages. Inasmuch as the first paragraph of the charge coupled the negative element of the want of probable cause with the wrongful act as essential to entitle the plaintiff to actual damages, it is by no means certain that they may not have applied the rule given in the first paragraph to that subject, and may not have construed the subsequent parts of the charge as qualifying it, notwithstanding the emphatic and clear expression in the charge, in another connection, that, if the ground on which the attachment was sued out was false, the plaintiff would be entitled to recover actual damages.

The plaintiff asked an instruction to be given which presented clearly, succinctly and correctly the distinction between the grounds on which actual damages and exemplary damages are respectively recoverable, in which the rule of law applicable to actual damages was correctly stated, and which, if given, would have removed the obscurity and apparent conflict on that subject contained in the charge of the court, which, however, the court refused to give.

The charge given under the grounds stated in the sixth paragraph of the charge as the basis of exemplary damages is equally obnoxious to objection as being wrong and misleading. The definition given in the seventh paragraph, *supra*, of malice is the reverse of what is correct. Malice, as meant in the law, not only does mean personal ill-will, but embraces more besides; and, besides, "an intention to injure and harass the defendant in that suit" would involve very clearly personal ill-will to the defendant.

This part of the charge, in effect, on the subject of malice confined the jury to considering whether the plaintiff in the attachment suit intended to injure and harass L. W. Carothers, the plaintiff in this action. The law will impute to an attachment plaintiff that which the law characterizes as malice under certain circumstances, though the facts may fall short of showing that he had the specific intention to injure the defendant in attachment, or to merely harass him by the proceeding.

"In a legal sense, any unlawful act done wilfully and purposely to the injury of another is, as against that person, malicious." 2 Greenl. on Ev., sec. 453. It need not imply malignity, nor even corruption, in the appropriate sense of these terms. Any improper motive constitutes malice in the sense it is here used. Drake on Attachments, sec. 733. See Jacobs *et al. v.* Crum, 4 Texas L. Rev.;

Culbertson *v.* Cabeen, 29 Tex., 256.   Legal malice might doubtless be imputed to one who exhibited gross and reckless negligence and carelessness in causing an attachment to issue wrongfully without good cause, and upon false grounds, when, but for such negligence and carelessness, he need not have been mistaken or misled as to the real facts upon which the attachment was predicated.

An instruction embracing a correct definition of malice was asked for by the plaintiff and refused.   The evidence in this case was of a character which rendered it proper, and perhaps essential to its correct application to the rights of the plaintiff, that the instruction thus asked should have been given.   If there was no probable cause for suing out the attachment, legal malice might be implied therefrom, or there might have existed some improper motive, or wanton recklessness or negligence, in failing to ascertain the facts as to the ground relied on for attachment (in case the jury believed the fact stated in the affidavit to be untrue), and, in such state of case, the charge ought not to have confined the determination of the question of malice as narrowly as it did.   Thus to limit the scope of essential elements of malice was calculated to mislead the jury to the prejudice of the plaintiff's rights.

The evidence showed that about the time the McIlhenny Company was about instituting their suit at Austin, Travis county, against L. W. Carothers, that Hendricks, the agent of the company who was acting in its behalf in the premises, and who initiated the attachment proceedings, by making the affidavit and superintending the levy of the attachment, learned before doing so that W. S. Carothers, who held a large debt against L. W. Carothers, was about to institute suit on his claim, and to proceed by attachment.   The eighth paragraph of the charge makes this state of facts, as matter of law, meet all the conditions and requirements essential to constitute probable cause for the McIlhenny Company to sue out the attachment in question.   Those facts, of themselves, evidently do not amount to probable cause from which to determine that L. W. Carothers was about to dispose of his property with the intention to defraud his creditors.   The expected action to be taken by W. S. Carothers was a significant fact, which, together with other facts that might have existed, may have constituted a chain of circumstances which would have shown the existence of probable cause.   But the knowledge by Hendricks that W. S. Carothers had made or intended to make affidavit that L. W. Carothers was about to dispose of his property to defraud his creditors, as the basis of an attachment against him, proved no more than that the affiant

made such a charge against L. W. Carothers, but it did not establish the fact that such charge was probably true.

The existence of such a fact would generally serve to notify creditors of an attached debtor of danger to their claims, and to put them speedily upon inquiry as to the facts which were supposed to authorize a resort to an attachment, and, together with other facts which might exist, be properly considered in determining from them all whether probable cause did or did not in fact exist for suing out an attachment.

The fact that another party has sued out an attachment on a ground like this is but hearsay, in a solemn garb, as to the truth of it; and the principle involved in Schrimpf v. McArdle, 13 Tex., 371, is applicable to such evidence, where it was held that the fact that certain persons had told the party who sued out an attachment on the ground that the defendant was about to remove out of the state, that the latter was running away, was evidence that was properly excluded. The court said that the evidence " was but hearsay. Besides, there was no evidence offered to prove that it was true, or that the plaintiff had any reason to believe it to be so." In the case of Jacobs, Bernheim & Co. v. Crum, 62 Tex., 401, it was said : " Such belief, however, as will thus protect against the consequences of the wrong, where that belief has been acted on in suing out wrongfully an attachment, must have had a reasonable basis for its existence; there must be some reasons for believing the grounds to be true." Citing Drake on Attach., sec. 737, which cited Schrimpf v. McArdle, supra.

The mere fact hypothetically stated by the court in the eighth paragraph of the charge clearly does not afford such reasonable basis. If the plaintiff in the attachment was actuated by considerations of apprehension for fear that an attachment might be issued and levied for another person prior to his own, which would thereby acquire a prior lien, and for that reason was influenced to sue out his attachment, if the grounds of his affidavit were untrue, so far from the belief that W. S. Carothers would sue out an attachment having the effect to furnish probable cause as charged by the court, it would be evidence of an improper motive — one which the law would deem malicious. See Jacobs, Bernheim & Co. v. Crum, supra. See, also, Blum v. Davis, 56 Tex., 427, 428.

There are other matters in the charge of the court which are complained of, which, in view of another trial to be had, we do not deem essential to notice, especially as the questions referred to are sufficiently well settled by familiar rules of law applicable to them,

and the application of them on another trial will be made according to the development of the case as it will then be presented under the pleadings and the evidence.

There are five several grounds assigned for error for the exclusion of evidence. We will dispose of them without particularizing in detail all the questions presented in the several bills of exception. It appears from the evidence that the entire stock of goods which the plaintiff had in his store were levied on, and were sold by the sheriff as a whole, in bulk; that the sheriff caused an invoice of the goods to be taken by his deputy, assisted by Matt. Ross. The evidence showed that the goods were sold by the sheriff on the basis of value as thus invoiced.

There was evidence that several boxes of the goods were nailed up, and such boxes were not opened until after the sale was over. This was the testimony of Habicht, the purchaser at the sale. Another witness stated that their contents were worth probably $500. The invoice made by the sheriff showed the estimate made by it of the goods to be $2,629.97, which amount is $879.97 more than the goods sold for. The plaintiff's petition alleges that the property or goods levied on was of the value of $10,512.55, as shown by invoice of said goods attached as an exhibit to plaintiff's petition. The plaintiff testified on the stand that the goods were worth about $7,500 at the time of levy, in the market of Thorndale (where his store was situated); that he had taken an invoice twenty days before the attachment and knew their value.

Under the issues presented by the plaintiff in respect to the sale made by the sheriff, and as to the value of the stock of goods sold, it was material to him to show the value of the goods contained in the unopened boxes, and what goods those boxes contained, and to show any fact that directly tended to show unfairness in the sale which caused a sacrifice of the goods by a sale for less money than they ought to have brought at a forced sale that was properly conducted.

The invoice of the goods taken by the plaintiff twenty days before the levy, showing the value of the goods and what goods the stock contained, in connection with his evidence on the subject, was admissible, and ought not to have been excluded, whereas he was only allowed to state the value in bulk of the entire stock levied on and sold. The evidence offered was of a character that tended to identify and particularize separately all the articles and their respective values, and to show whether any of the goods, and which of them, if any, were not embraced in the invoice made under

the direction of the deputy sheriff. It tended circumstantially to strengthen the evidence of the plaintiff, giving the value of the entire stock, and, connected with other evidence, it may have been practicable for the plaintiff to have shown, or aided in showing, discrepancies in values between the real value and those fixed by the sheriff's invoice, on the basis of which the goods were sold in bulk.

The goods having been sold in bulk on the basis of the estimate made by the sheriff's invoice, which was less than one-third of the estimate made by the plaintiff of the same goods, several boxes of which were shown never to have been opened, we think it was competent to introduce the invoice made by the plaintiff as tending to show that the sale was made in a manner calculated to, and which might in fact, have caused the goods to sell at a depreciated price, and causing damage to the plaintiff.

By bill of exceptions No. 2, the plaintiff offered to prove by Matt. Ross that he took the invoice for the deputy sheriff under the McIlhenny Company attachment; that the sheriff ordered him to mark them low down, and that in taking the invoice he did not count or measure the articles, and did not know the value of the goods. The plaintiff's counsel stated to the court that they would connect this testimony by showing that the goods were sold by the deputy sheriff on this invoice as a basis of their value, and by the witness Teague the plaintiff offered to prove that he assisted in taking said invoice, and could further show their *cost* price by invoice of L. W. Carothers, and that there were several boxes invoiced in said inventory without opening the said boxes or knowing the value of their contents. Counsel made the same statement to the court. The court excluded the testimony on the ground that it was immaterial unless the plaintiff could show that the McIlhenny Company procured the same to be done for the purpose of committing a fraud on plaintiff.

The evidence offered was relevant, and it was error to exclude it. The reasons given by us on the admissibility of the evidence concerning the invoice taken by the plaintiff apply equally to the questions involved under the foregoing bill of exceptions.

Appellees filed cross-assignment of errors, and in presenting such assignment and propositions thereunder to the court, they ask that, if the cause be reversed, it be also dismissed for the want of jurisdiction in the trial court.

Appellees assigned the following as error:

" The court erred in refusing to give special instruction No. 1 asked by defendant, which is as follows:

" ' If the jury believe from the evidence that, at the time of the

commencement of this suit, the defendant, the McIlhenny Company, had its principal place of business in the county of Harris, in this state, and had no agency or representative in this county, and that the defendants James, Pillow and Walker were inhabitants and citizens of Travis county, they will find for all defendants.'"

Under which they urge as a proposition that:

"The sheriff of Milam county, and sureties on his official bond, having been dismissed from the suit, the remaining defendants were the McIlhenny Company, a corporation having its place of business in Harris county, and James, Pillow and Walker, sureties on the attachment bond, who resided in Travis county.

"The McIlhenny Company had no agent or representative in Milam county. The district court of that county was, therefore, without jurisdiction, in view of the sworn plea of privilege interposed by defendants."

The pleadings of the appellees setting up this defense had been acted upon by the court previous to the trial of the case upon the merits, overruling the pleas of privilege and to the jurisdiction of the court over the defendants. That issue was consequently disposed of, and the court could not properly have given the charge asked for, as that branch of the case was not involved under the pleadings as they stood when the parties entered into the trial before the jury upon the facts and merits of the case. The charge must conform to the case made by the pleadings and evidence. Sayles' & Bassett's Practice, sec. 647, and authorities there cited.

As the question, however, may be renewed on another trial, we will remark that, under the pleadings and evidence before us, it seems that the plea of privilege was insufficient; and if it had been a good plea, that it would not have been sustained under the evidence.

The plea alleged:

"1. That before and at the time of the commencement of this suit, the principal office of the defendant, the McIlhenny Company, was, and now is, in the city of Houston, county of Harris, state of Texas, and that said company had not, at the time of the commencement of this suit, an agency or representative in the county of Milam, in said state, and that neither the said cause of action nor any part thereof, as set forth in the said amended petition, arose in the said county of Milam.

"2. That the said defendants, James and Pillow and W. B. Walker, at the time of the commencement of this suit, resided and had their domicile in the county of Travis, in said state, and not in the county of Milam.

" 3. That the said defendants have not, nor has either of them, in manner and form as in said petition alleged, committed any trespass in said county of Milam for which a civil action in damages will lie, all of which the defendants are ready to verify."

The plaintiff's petition alleged that the McIlhenny Company committed the alleged trespasses through and by their agent B. F. Hendricks; that he caused and procured the deputy sheriff to oust and evict him from the possession of his said goods; that said deputy sheriff, at the instance and under the directions of said Hendricks, wrongfully, maliciously and vindictively seized said goods, and kept them locked up in the storehouse, wasting and ruining for want of proper care and attention. These acts are alleged to have been thus done and committed in Milam county, state of Texas. Under these allegations, and others of a similar character contained in the petition, it is no sufficient answer to the jurisdiction of the district court of Milam county, that the McIlhenny Company had its office in Harris county, and that the other defendants resided in the county of Travis. The plea cannot be sustained unless it negatives the existence of any of the exceptions which, under the statute, would authorize jurisdiction where the suit is brought. Stark v. Whitman, 58 Tex., 375; Breen v. T. & P. R'y Co., 44 Tex., 302; H. & T. C. R'y Co. v. Graves, 50 Tex., 200. Such pleas should exclude all such supposable matter as would, if alleged on the opposite side, defeat the plea. Raleigh & Heidenheimer Bros. v. Cook, 60 Tex., 442, and the cases above cited. It was essential to constitute this a good plea that it should have negatived the fact that the McIlhenny Company did act as alleged through its agent Hendricks in the commission of the imputed trespasses.

The evidence is uncontradicted, and not controverted, that Hendricks acted in the premises as agent as alleged, and that he actively and personally participated in and directed the levy that was made on the goods; hence, if the plea had been itself sufficient in law, it would not have been supported by the evidence. See Hubbard v. Lord, 59 Tex., 386.

REVERSED AND REMANDED.

[Opinion adopted January 27, 1885.]