### P. J. WILLIS & BRO. v. McNATT & MARCH.
#### No. 2685.

1. **Jurisdiction—Seizure of Goods Under Illegal Attachment.**—Willis & Bro. having procured a writ of attachment from the District Court of Galveston County against McNatt & March upon an affidavit not warranted by the facts, having sent the writ by their agent to Montague County, the residence of the defendants in attachment, and having caused the seizure of the goods of the defendants, the plaintiffs thereby so far participated in the seizure as to be liable in trespass for damages for the illegal seizure in Montague County. (See facts.)

2. **Abuse of Legal Process.**—A sheriff having an execution and a writ of attachment which were levied upon the same goods, advertised and sold the goods. *Held,* as to the sale of the remnant after the execution had been satisfied, the sale thereof under the attachment (no order of sale existing therein) was illegal, and was an abuse of the process in the hands of the sheriff, for which an action would lie against those participating in the sale and conversion of the goods.

3. **Exemplary Damages.** — Exemplary damages may be allowed against the plaintiffs in an attachment obtained by them upon a ground not true in fact, and the falsehood of the affidavit being known or should have been known to the plaintiffs in the attachment.

4. **Grounds of Attachment.**—The apprehension that some other creditor might attach affords no sufficient reason for suing out a writ of attachment, but rather indicates a reckless disregard of the rights of the debtor where the attachment is sought on such grounds.

5. **Remarks of Counsel in Argument.**—Objectionable words and phrases used in argument, when in reply to objectionable remarks by the adversary, and where it does not appear that the remarks were of injury, are no grounds of reversal.

6. **Actual Damages—Value—Interest.**—A verdict is not excessive when it is supported by testimony to actual value of the goods when taken, and does not exceed such value with interest at eight per cent until the date of the trial.

APPEAL from Montague. Tried below before Hon. F. E. Piner. The opinion states the case.

*Stevens & Herbert* and *G. E. Mann,* for appellants. — 1. Under the

evidence and charge there was no trespass committed by Willis & Bro. in the county of Montague, and the verdict should have been for defendants on their plea in abatement.    Hilliard v. Wilson, 65 Texas, 286.

2.    The verdict is contrary to the charge and the evidence, in that the court, in substance, charged that the verdict must be for the defendants unless there was an excessive levy and a wrongful sale of goods under it, and the evidence shows there was no actual possession of the goods under the writ of attachment complained of, and only a constructive levy and no sale under the writ, but that the writ was subject to a writ of execution and only took effect as to overplus of proceeds of sale under first levy, and there were no goods held under the writ of attachment and no sale of goods under it.    Walton v. Compton, 28 Texas, 575; Freem. on Ex., sec. 135; Murf. on Sheriffs, sec. 535; Cresson v. Stout, 8 Am. Dec.; 373; Drake on Att., 6 ed., sec. 269; Garner v. Cutler, 28 Texas, 181; Weaver v. Wood, 49 Cal., 297.

3.    There was no malice and no injury to mercantile credit, and $2750 exemplary damages is an excessive verdict under the evidence.    Wallace v. Finberg, 46 Texas, 49.

4.    The verdict for exemplary damages shows that it is probable that the jury were influenced by unwarranted remarks of counsel, calculated to excite their prejudice.    Willis & Bro. v. McNeill, 57 Texas, 465; Blum v. Simpson, 66 Texas, 88.

5.    The plaintiffs had no right of action in Montague County, as against the plea in abatement, because they did not prove their allegations on which they rested a trespass committed under this writ of attachment.    These allegations were:

(1)    Excessive levy under the Willis & Bro. writ of attachment.

(2)    Collusion with the sheriff in making a sale under this writ without any order of sale from the court of the writ.    Garner v. Cutler, 28 Texas, 181; Walton v. Compton, 28 Texas, 575; Drake on Att., 6 ed., secs. 296a, 269, 196b; Weaver v. Wood, 49 Cal., 297; McClane v. Rogers, 42 Texas, 219; Murf. on Sheriffs, secs. 674, 977; Ginsbury v. Pohl, 35 Md., 505; Luce v. Horsenfield, 50 Vt., 428.

6.    The evidence shows that Willis & Bro. are in nowise responsible for the conduct of the sheriff and deputies, in buying at the sale, and McNatt & March waived the irregularity.    Murf. on Sheriffs, secs. 1000, 1007; Creagh v. Townshend, 9 Ala., 959; Scott v. Mann, 36 Texas, 157; Farnham v. Perry, 43 Vt., 473; Terrill v. Auchauer, 14 Ohio St., 80.

*Davis & Garnett,* for appellees. — 1. The District Court of Montague County had jurisdiction, because the petition and proof showed that the attachment was not only wrongful but was coupled with the fraudulent intent to sacrifice the property of McNatt & March and buy it in for less than its value and sell it for a profit, and that George Diehl, the agent

of P. J. Willis & Bro., was present in Montague County and superintended the levy and execution of the attachment. Cahn Bros. v. Bonnett, 62 Texas, 674; Hilliard v. Wilson & Blum, 65 Texas, 289.

2. The District Court of Montague County had jurisdiction, because the sheriff's authority to sell was exhausted when enough had been sold to satisfy the execution, and his sales after that time were without authority and constituted him a trespasser, and as his sales were directed by P. J. Willis & Bro., and ratified by them; they were in like manner trespassers. Hilliard v. Wilson & Blum, 65 Texas, 289; Drake on Att., sec. 194.

3. The order of sale issued by the county judge of Montague County was without jurisdiction and void, and furnishes no justification either to the sheriff or to P. J. Willis & Bro., and was *functus officio* before the sale was completed, and all proceedings thereunder were illegal and void. Rev. Stats., arts. 171–74.

4. The evidence well supports the finding for exemplary damages, and would justify a much larger verdict. Jacobs, Bernheim & Co. v. Crum, 62 Texas, 401.

HOBBY, JUDGE.—The appellees McNatt & March brought this suit in the District Court of Montague County against P. J. Willis & Bro., for actual and exemplary damages resulting from an alleged wrongful and malicious attachment sued out and levied by the latter on the goods and merchandise of the former.

The appellees, who were the plaintiffs below, alleged that the defendants, designing to oppress and harrass plaintiffs and destroy their business and credit, did on November 17, 1884, in the District Court of Galveston County, file a suit against them, wherein they claimed that plaintiffs and one Morris were indebted to said Willis & Bro. in the sum of $2429.70; and on the same day said Willis & Bro. persuaded and induced one Thomas F. Lawson, as their agent, to make and file in said cause an affidavit for a writ of attachment, wherein is stated as cause for such attachment that said McNatt & March and Morris were about to convert a part of their property into money for the purpose of placing it beyond the reach of their creditors, and that on the same day P. J. Willis & Bro. caused an attachment to be issued in said cause, directed to the sheriff or any constable of Montague County, Texas, and commanding said sheriff to forthwith attach enough of the property of said McNatt & March and Morris to make said sum of money and the costs of said suit.

It is further alleged that this affidavit was untrue, and the attachment sued out was for the purpose of injuring or harrassing plaintiffs; that appellants knew said affidavit to be untrue, but procured the same to be made; that said attachment was immediately placed by said Willis & Bro. in the hands of one Diehl to deliver to said sheriff of Montague County,

Texas, for the purpose of having the same levied upon the property of McNatt & March and Morris, and that said Diehl was then and there instructed by said Willis & Bro. to superintend the execution of said writ for them; and that said Diehl on November 19, 1884, acting under and representing P. J. Willis & Bro., entered the storehouse of plaintiffs in Burlington, Montague County, Texas, and then and there unlawfully aided, assisted, and abetted said sheriff in seizing, taking, and detaining under said writ of attachment plaintiffs' entire stock of goods, of the alleged value of $15,000, and that after seizing said goods that said Diehl took and converted to his own use, under instructions from appellants, goods to the value of $125.

This levy, it was alleged, was made upon goods largely exceeding in value the amount called for in the writ of attachment, which excessive levy was caused by said Diehl, acting with full authority from appellants; that said goods were wrongfully held by the sheriff, directed by said Diehl without any authority, and were sacrificed for the sum of $6171.53, and plaintiffs' damage was laid at $8829. It was also alleged that the goods were damaged by the manner of handling, moving, and selling under the direction of Willis & Bro. Plaintiffs further alleged that at the time of the suing out and levy of said writ they were merchants in high standing and good credit, doing a large business and making $5000 per year, which business was destroyed by reason of said levy, claiming $10,000 damages therefor, and also claiming exemplary damages to the extent of $10,000.

The defendants denied that any trespass was shown in Montague County which gave the District Court of that county jurisdiction over them; alleged that said writ was legally levied; was not excessive, because other writs were in the hands of the sheriff; and alleged that the attached goods were sold under an order of sale from the County Court of Montague County under a subsequent levy on the same property under a writ of attachment in another suit.

Defendants denied that there was any abuse of the writ sued out by them. They further alleged that before the suing out of the writ of attachment they had obtained a judgment against plaintiffs in the District Court of Galveston County, Texas, and that an execution was issued on said judgment on the same day that said attachment was sued out, and that the goods of McNatt & March were first levied on by virtue of said writ of execution; and that on the same day, the 19th of November, 1884, other attachments were also levied upon said stock of goods, and that on November 20 an order of sale was issued out of the County Court of Montague County under one of said other attachments, and that the goods of McNatt & March were sold by virtue of said execution from Galveston County, and under said order of sale, and not under the attachment sued out by defendants.

Plaintiffs denied that the sale was made under the order referred to,

and say that the execution and attachment were levied on the goods at the same time; that the order of sale was illegal and void; that after selling a sufficient quantity of the goods to satisfy the execution the remainder was sold without authority of law, under defendants' direction.

There was a verdict and judgment for the plaintiffs below for the sum of $5394.37 actual damages, and $2750 exemplary damages.

The questions raised by the assignments are, first, that under the charge and the evidence, as to the plea in abatement, there was no jurisdiction. In other words, the position assumed by the appellants is that no such trespass was shown to have been committed by them or under their authority as would give the District Court of Montague County jurisdiction as to them in this cause.

From the evidence in this case it can not be seriously contended that there was any legal cause for the issuance of the writ of attachment. It was sued out upon the affidavit of Thomas Lawson, made at Galveston, who was one of appellants' agents. He had never been in Montague County, where appellees conducted their business; did not know them, and does not appear to have taken any steps in the direction of ascertaining whether there was any ground for the writ. The affidavit stated that McNatt & March "were about to convert a part of their property into money for the purpose of placing it beyond the reach of their creditors." Appellees were in debt, but it is shown by the facts that they were doing a prosperous business, and the undisputed evidence is that they were promptly and conscientiously applying the proceeds of their business to the payment of their debts, and that in a reasonable time they would be able to have liquidated all. Their business was prosperous, and their mercantile standing and capacity were considered first class. A few days prior to the issuance of the writ Diehl, the authorized agent of appellants, had a conversation with them relating to the debt then due appellants. He was then informed by appellees that they were unable to pay it at that time, owing to the scarcity of collections and the condition of the crops, but that they would be able to do so if time was given them. They proposed to sell their entire stock of goods to appellants for 90 cents on the dollar, in payment of their debt, and the balance which might be due them, above the debt, they desired appellants to pay to their other creditors. This offer was declined, as was an offer by appellees to have an agent of appellants placed in charge of the store and goods with authority to apply the proceeds of sales to the liquidation of the latter's debt. Having a full knowledge of this desire on the part of appellees to pay the debt, and their willingness to make the above arrangements looking to the consummation of that object, appellants sued out the writ. The record discloses no fact which authorized appellants to believe that the ground existed upon which the affidavit was made. On the contrary, appellees' conduct repelled the idea that they were "converting any part

of their property into money for the purpose of placing it beyond the reach of their creditors."

The reason given by the agent, Diehl, for issuing the writ was the apprehension that some other creditor might give appellees trouble. If this was the motive which prompted the attachment, it not only afforded no defense for the wrongful issuance of the writ, but it would tend strongly to show, where the affidavit was untrue, that the affidavit was recklessly made, and the affiant did not believe it to be true when made, but sued out the writ for the sole purpose of securing a preference over some other creditor. Carothers v. McIlhenny, 63 Texas, 143.

In addition to these circumstances it was shown by Diehl, who was the travelling agent and financial adjuster of appellants, that he "intended to buy the goods at the time the attachment was issued, provided he could get them cheap enough. Intended to buy them for as little as he could get them, and afterwards sell for all he could get, and Willis & Bro. would make the profit." He attended the sale, bid $5500 for the entire stock and demanded that they should be knocked off to him in bulk. In case he "had bought he had made an arrangement by which he was to sell them and take a $7500 note in payment, and the balance he expected to be paid in money, or otherwise secured." This agent, influenced by these motives, was sent to Montague County to levy the writ. He superintended the seizure, entered appellees' store, and took possession of the goods and appropriated to his own use goods of the value of $125. If these acts had been committed in person by appellants, they would have constituted a trespass in Montague County, for the redress of which jurisdiction would have attached in that county. It is urged that they directed no act the commission of which gave jurisdiction to that county.

The rule which applies to this feature of the case is stated by Judge Cooley as follows:

"'That which the superior has put the inferior in motion to do must be regarded as done by the superior himself, and his responsibility is the same as if he had done it in person. And it is not limited to cases where the act is directed by the superior, for so restricted it would be of but little moment. He is liable for the servant's acts, not only when they are directed by him, but when the scope of his employment or trust is such that he has been left at liberty to do, while pursuing or attempting to discharge it, the injurious act complained of. It is not merely for the wrongful acts he was directed to do, but those he was suffered to do, that the master must respond." Cool. on Torts, 533. The application of this doctrine in the present case would make appellants liable for the acts of their agent Diehl. These acts, together with the unauthorized sale of the goods under the writ of attachment in Montague County, which will be more fully explained hereafter, constituted a tresspass in that county, for which a civil action in damages would lie. In so far as

the question is involved, whether the facts disclosed by the record gave jurisdiction to the District Court of Montague County, where the writ was levied, we are of opinion that it is a stronger case in its facts supporting the jurisdiction of the county where the writ was levied as to the appellants than was the case of Hilliard & Wilson v. Blum, 65 Texas, upon the same point. We are consequently of the opinion that the verdict is not, as is contended in the assignment, contrary to the evidence because it fails to show such facts as would give the court jurisdiction over appellants. What we have thus far said disposes also of the eleventh assignment complaining of the court's action in refusing a special charge to the effect that the "acts of Diehl, although having general authority from appellants, would not bind them by any acts of his in taking, etc., any part of the goods under the writ, unless he had special authority from appellants," etc. This charge we believe to have been properly refused, and the general charge containing the converse of the proposition we think was rightly given.

The next question presented by the assignments is that the verdict is contrary to the evidence, because the testimony did not show that there was any abuse of the writ of attachment by appellants in making the levy, and that the sale of the goods was not made under said attachment, but under an order of sale issued out of the County Court of Montague County.

To the appellees' claim that the sale of the goods was made without authority, it was replied by the appellants that a judgment had been obtained by them in the District Court of Galveston County upon two ironclad notes amounting to $2989.85, upon which execution issued and was levied on the property of appellees at the same time the attachment was levied, and that the goods were sold under this execution.

Appellees in response to this say that after sacrificing and selling a part of the goods and satisfying the execution, the balance was sold, without any authority, under the attachment and applied thereto.

The sale of the balance of the goods appellants claim was made by virtue of an order of sale issued from the County Court of Montague County. The proof bearing upon this branch of the case established clearly that the sale was made under the attachment four months prior to any foreclosure of the attachment; and the officer's return upon both of these writs shows that the sale was made under them. It appeared from his return of the execution that the goods levied on, the entire stock, brought $6171.33; that the costs amounted to $1041.52, leaving a balance of $5129.81, all of which was remitted to appellants, the execution for $2989.85 being satisfied and $2139.96 being credited on the attachment.

The return of the officer disclosing these facts was at least prima facie evidence as between the parties to this suit that the sale of the goods was not made, as claimed by appellants, pursuant to any order of sale, but under the execution, in connection with the attachment. Freem. on Ex.,

sec. 364. If the verity of the return could be as between the parties questioned, still it is apparent from other evidence in the case that the sale was not made, as claimed by the appellants, under the order of sale. This order was issued by the county judge upon the application of the Gouss Henicke Hat Company, which had levied a subsequent attachment upon the property. (Several writs had been levied on the same goods after the seizure under appellants' writ.)

That there was no sale under this order is established by the fact that the order required the return of the sale by the first Monday in January, 1885, whereas the sale of the property was not completed until the 15th of January, 1885, two weeks after the order was *functus officio*. Again, there was no deposit of the money derived from the sale in court, and nothing done in connection with the sale in compliance with article 174 of the Revised Statutes regulating such sales.

It is obvious from the evidence that appellants' defense to the charge that the sale of the property after the execution was satisfied was unauthorized, that it was made pursuant to the order of sale referred to, is not supported by the facts. The authority of the officer, who was acting under appellants' direction, having ceased when the execution was satisfied, the further sale under the attachment and the application of the proceeds to it was a trespass in Montague County, for which appellants were liable in damages in such county. The sale under the writ without authority was such an abuse of it as authorized, under the charge of the court upon this feature of the case, a verdict for the appellees.

It is assigned as error that the verdict is excessive, in that it gives exemplary damages when there was no malice, express or implied, shown.

The verdict was for damages of this character in the sum of $2750. It is well understood that when this process is maliciously sued out such damages are recoverable. With reference to this assignment, it would seem to be only necessary to say, as we have before stated, that there was no foundation whatever for the writ. The fact that the ground stated in the affidavit, that appellees " were about to convert a part of their property into money for the purpose of placing it beyond the reach of their creditors," was untrue was known, or should have been known, to appellants. That this was sufficient to authorize the verdict was settled in Jacobs, Bernheim & Co. v. Crum, 62 Texas, 416.

The apprehension that some other creditor might attach offered no sufficient reason for suing out the writ, but rather indicated a reckless disregard of appellees' rights, in connection with all the facts in the case. These circumstances, together with those heretofore mentioned, were sufficient to establish the fact that the writ was wrongfully and maliciously sued out. Such being the case, we can not say the verdict was excessive.

The remarks of counsel which are called to our attention by the ninth assignment, and which were to the effect that "P. J. Willis & Bro. had

a man at Galveston, whose name is Lawson, and who made the affidavit against McNatt & March for the attachment, and who is paid by Willis & Bro. to swear for them in obtaining attachment writs," is not unsupported by the evidence in the record. The further language of appellees' counsel below objected to is as follows: "Gentlemen of the jury, Mr. H. (counsel for appellants) told you that McNatt & March kept a place of gaming, a gambling hell, in the back part of the upper room of their store," etc., "but I tell you that the mercantile firm of Willis & Bro., of Galveston, is forty miles nearer hell than any place I know of." It appears from the language used that it was provoked by language of the counsel for appellants, and in such case it has been held that it will not afford ground for a reversal alone. Moreover, in this case it does not appear to have influenced the verdict. The remaining language complained of we do not think could have had any appreciable effect upon the cause.

The only assignment remaining which we think necessary to be considered is in effect that the verdict for actual damages is excessive, because, as claimed in appellant's brief, under the evidence the highest value of the goods, which afforded the basis for the verdict for such damages, was only $4591.50, whereas the verdict was for the sum of $5394.37 actual damages. According to this estimate of the appellants, the excess would be $702.77. Looking to this statement of the appellants or to the evidence in the case as to the value of the goods, the supposed excess is accounted for by the allowance of interest on their value at the rate of 8 per cent, and to which the appellees were entitled as a part of the actual damages found by the jury.

There being no error in the record, we think the judgment should be affirmed.

*Affirmed.*

Adopted November 12, 1889.